## AMERICAN ARBITRATION ASSOCIATION
### Employment Arbitration Tribunal

| | | |
|---|---|---|
| PERCY PAYNE, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | AAA No. 01-18-0003-0418 |
| | ) | |
| DST SYSTEMS, INC., | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## FINAL AWARD AND ORDER REGARDING APPLICATION FOR ATTORNEY'S FEES AND COSTS

### Introduction

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the personnel manual or employment agreement entered into by the above-named parties and having been duly sworn and having duly heard the proofs and allegations of the parties, and Claimant being represented by The Klamann Law Firm, Kapke & Willerth, LLC, Humphrey, Farrington & McClain PC, Kent, Beatty & Gordon, LLP and White Graham Buckley & Carr, LLC, and Respondent being represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, Stinson LLP, and Shook, Hardy & Bacon LLP, hereby AWARD, as follows:

The parties have settled their dispute except for the sole pending issue of Claimant's August 28, 2020 Application for Attorney's Fees and Costs which seeks $502,967.85 in fees plus $10,018 in costs.[1] Claimant Percy Payne (herein "Claimant" or "Payne" or "Mr. Payne") seeks $416,245 for 566.35 hours spent specifically on the Percy Payne claim plus $76,704.60 which according to Claimant's Counsel represents a fair percentage of Group Time that benefited

---

[1] Claimant's counsel advises that this $10,018.25 in costs (less a $500 credit) is being sought in three different arbitrations and that in the event these costs are awarded in more than one Fee Application that a deduction will be applied to offset costs to avoid a double recovery.

1647107v1

Mr. Payne and the claimants in 495 other arbitrations asserting the same claims. This $76,704.60 represents 1% (valued at $76,704) of Total Group Time (11,233.51 hours of Total Group Time having an alleged value of $7,670,460) for work on all 495 arbitrations that benefits all arbitrations rather than a specific arbitration. Claimant's counsel argues that the fee request is reasonable under the loadstar method and that Claimant's counsel is not limited to a 40% contingency fee.

Respondent DST Systems, Inc. (herein "Respondent" or "DST") has opposed Claimant's fee request and has suggested that Claimant's attorneys' fees should be limited to, at most, ███████, representing 40% of the claimed recovery ███████ plus costs of $10,018.25. DST takes the position that Claimant's fee agreement provides for a 40% recovery and points out that Claimant's attorneys have sought and obtained a 40% recovery in other arbitrations and that Claimant's counsel accepted a 40% fee in this case on the settlement amount paid by Ruane, Cunniff & Goldfarb, Inc. (herein "Ruane"). In the alternative, DST argues that if the attorneys' fee is calculated based on the loadstar method that the fees allowed should be greatly reduced because some time records were not contemporaneously prepared, the hours allegedly spent were inflated by inclusion of time spent on other separate litigation and arbitrations, time spent in cases where DST was not a party and cases in which a federal judge disqualified Claimant's counsel. DST also claims that the fees being sought are grossly disproportionate to the amount of the recovery, that the claimed hourly rates are too high, and that the number of hours claimed should be reduced because of alleged vague time entries, failure to bill by one-tenths of an hour, alleged unnecessary duplication of efforts and because certain tasks could have been performed by less senior attorneys at lower rates or by paralegals. These and other arguments will be addressed below.

2

Both parties agreed at the hearing on attorneys' fees to a reasoned opinion and agreed that there was no need for additional briefing prior to an award on the attorneys' fees and costs issue.

**A.     The Arbitrator is an expert on attorney's fees and familiar with the issues and counsel in this case, and he has wide discretion in awarding attorneys' fees.**

The Eighth Circuit affords courts wide discretion to determine whatever amount of attorney's fees is appropriate. Unless it is clear the court abused this discretion, any amount of attorney's fees may be awarded. "The amount of an award of attorneys' fees rests within the sound discretion of the court and we will not disturb it absent clear abuse of that discretion." *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009) (citing *Walton Gen. Contractors, Inc./Malco Steel, Inc. v. Chicago Forming, Inc.*, 111 F.3d 1376, 1385 (8th Cir.1997)).

The court presiding over the case is afforded this broad discretion because it "knows all the case's issues" and "is an expert on the question of attorney fees." *In re Alcolac, Inc. Litigation,* 945 S.W.2d 459, 461 (Mo. App. W.D. 1997) (citing *Roberts v. M c Nary,* 636 S.W.2d 332, 338 (Mo. banc 1982) (overturned on other grounds)), *see also Berry v. Volkswagen Group of America, Inc.* 397 S.W.3d 425, 430 (Mo. App. W.D. 2013) ("The trial court is deemed an expert at fashioning an award of attorney's fees and may do so at its discretion."). The Arbitrator knows the case, is familiar with the attorneys and the work performed.  In addition, the Arbitrator has over 40 years of experience as a practicing attorney in Kansas City, Missouri, has litigated, mediated and decided attorneys' fees issues in the past, and is familiar with attorneys' rates in Kansas City and Missouri.  Under applicable law, the Arbitrator has great discretion in determining what amount of attorney's fees that is reasonable.

**B.     Claimant's Counsel is not limited to a contingency fee award of 40% of the recovery.**

DST argues that Claimant's attorneys' fees should be limited to 40% of the recovery. While the attorneys' fee agreement between Claimant and his counsel does provide that counsel "will be entitled to a fee of 40% of the gross compensation you are awarded by a jury, arbitration panel or agree to accept in settlement," it goes on to say that "[b]ecause the statute we are suing under allows for the recovery of attorneys' fees we will be requesting that our fees be included in any final judgment or settlement." The Arbitrator concludes that the intent of the fee agreement was to allow Claimant's counsel to choose between a 40% contingency and the loadstar method, which is consistent with applicable law.

As DST admitted in its Opposition to Claimant's Counsel's Application for Attorney's Fees and Costs (herein "DST Opposition") at p. 8:

> Courts within the Eighth Circuit use two main approaches to determine an appropriate fee: (1) the percentage of the benefit approach or (2) the lodestar method. *Keil* v. *Lopez*, 862 F.3d 685, 701 (8th Cir. 2017); *see also Johnston* v. *Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). **The Eighth Circuit has found "[i]t is within the discretion of the district court to choose which method to apply."** *Johnston*, 83 F.3d at 246. (Emphasis supplied).

The Arbitrator finds as a matter of fact and conclusion of law that Claimant may seek recovery of attorneys' fees under the loadstar method, and Claimant's counsel are not limited to a recovery of 40% of the settlement amount.

**C.     Mr. Payne is a prevailing party.**

ERISA allows courts in their discretion to "allow a reasonable attorney's fees and costs of action to either party." 29 U.S.C.A. § 1132. The Supreme Court explains this does not require the Claimant to prevail, only that he shows "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245, 130 S. Ct. 2149, 2152, 176 L. Ed. 2d 998 (2010) (*quoting*

*Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). In order to meet this requirement, a litigant must show more than a "trivial" success or a "procedural victory." *Id.*

Because a settlement is not just a procedural victory, a party that obtains a settlement is a "prevailing party." "The phrase 'prevailing party' should not be limited to a victory only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he or she obtains a favorable settlement of the case..." *U. S. for Heydt v. Citizens State Bank,* 668 F.2d 444, 447 (8th Cir. 1982)*, See also Wray v. Clarke,* 151 F.3d 807, 809 (8th Cir.1998) ("The term 'prevailing party' includes a civil rights complainant that prevails through settlement in lieu of litigation.").

**D.      The Eighth Circuit holds a prevailing claimant in an ERISA claim should be denied attorney's fees in only the rarest of circumstances.**

DST has not disputed that Mr. Payne recovered 100% of his damages; thus, he has prevailed in full. He is therefore eligible for attorney fees absent the rarest of circumstances, which do not exist here. "[A]lthough there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees." *Starr v. Metro Sys., Inc.,* 461 F.3d 1036, 1041 (8th Cir. 2006). The reason a prevailing plaintiff almost always receives fees is that ERISA is liberally construed to protect employees' retirement savings by securing their ability to litigate their claims. ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts. *Id.,* (quoting *Welsh v. Burlington N., Inc., Employee Benefits Plan,* 54 F.3d 1331, 1342 (8th Cir.1995)).

There are five factors a court should consider when determining if the case before it is the rare ERISA case that does not warrant an award of fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question [sic] regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984). Not all of these factors need to weigh in favor of the prevailing plaintiff to require an award of attorney's fees. For instance, in *Starr*, the Eighth Circuit held it was an abuse of discretion to deny attorney's fees even though the first and fourth factors were not met. *Starr*, 461 F.3d at 1041. While the defendant did not act in bad faith and the plaintiff brought the case individually (as opposed to a class action), he was still entitled to attorney's fees because the defendant had the ability to pay attorney's fees, attorney's fees would serve as a deterrence, and the defendants lost on the merits (though survived summary judgment). *Id.* In denying fees, the court abused its discretion by undermining ERISA's purpose of empowering employees to recover losses to their retirement accounts: "Finally, given the remedial nature of ERISA legislation, and the need for ERISA litigants to have effective access to the courts to vindicate their rights, we hold that the district court abused its discretion in denying Starr's request for attorney fees." *Id.*

Here, like *Starr*, Mr. Payne's claim is not the rare case when the prevailing party can be denied attorney's fees. As in *Starr*, DST has the ability to pay. Attorney's fees will also deter DST from failing to monitor their employees' (including Mr. Payne's) retirement accounts in the future. The defendant in *Starr,* like DST in this case, survived summary judgment. Here, DST chose not

to defend on the merits, but decided to pay Mr. Payne 100% of his losses to settle his claim shortly before a hearing in the case after vigorously contesting his claim for over two years.

Mr. Payne did not prove that DST actions were highly culpable or that it acted in bad faith. However, he did produce evidence of some culpability by DST. For example, one of the members of the advisory committee gave a deposition wherein he continued to repeatedly insist he was never a fiduciary.

Mr. Payne also meets the fourth factor. Not only does his counsel represent 495 other plan participants, but it is clear DST had no interest in class-wide settlement until arbitration hearings were set to begin. Without Claimant's Counsel's efforts in filing and pursuing these arbitrations to a hearing, DST would likely still be taking the position that Plan-wide relief is impossible. Because Mr. Payne's arbitration was one of the earliest one, the work done pursuing his claims benefited all arbitration claimants represented by Claimants' counsel and may have benefited the other 9,500 Plan participants by encouraging DST to try to reach a class settlement. *Starr* is on-point. Moreover, Payne sought to resolve a significant legal question regarding ERISA relating to the liability of DST for failing to monitor Ruane, its investment adviser.

As to the fifth factor, the Arbitrator finds that by settling for the amount claimed by Payne, the relative merits of the parties' positions favors an award of Claimant's attorneys' fees.

The Arbitrator finds as a matter of fact and law that this is not one of the rare cases where Claimant's request for fees should be denied. Indeed, DST does not contend that no fees should be allowed; rather, it contends that a 40% contingency or in the alternative a lower loadstar fee should be allowed.

**E.     The Eighth Circuit approves of using the "lodestar" method to determine the amount of attorney's fees in ERISA actions which begins with a reasonable rate multiplied by a reasonable number of hours.**

The Eighth Circuit approves using the "lodestar" method to determine reasonable attorney's fees in ERISA cases. *See Brown v. Aventis Pharm., Inc.,* 341 F.3d 822, 829 (8th Cir. 2003), *see also Local 513, Int'l Union Operating Engineers v. Larry Ortmann Contracting, Inc.,* No. 4:08-CV-1177 CAS, 2009 WL 151698, at *2 (E.D. Mo. Jan. 22, 2009) ("The Eighth Circuit has affirmed this Court's use of the lodestar approach to determining an attorney's fee award in an ERISA withdrawal liability case.") The lodestar is determined by the number of hours reasonably expended times a reasonable hourly rate for those hours. *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir. 2002).

**i.     The twelve factors to consider when determining a reasonable loadstar**

There are twelve "legitimate factors" which courts in the Eighth Circuit should consider "in some if not most cases" when determining whether a proposed lodestar amount is reasonable. *Greater Kansas City Laborers Pension Fund v. Thummel,* 738 F.2d 926, 931 (8th Cir. 1984) (citing *Seymour v. Hull & Moreland Eng'g,* 605 F.2d 1105, 1117 (9th Cir. 1979)). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Seymour,* 605 F.2d at 1117.

The Arbitrator has undertaken an analysis of these factors to determine if the requested fee is reasonable.

1. **The time and labor required and whether time spent defending Ruane, Cunniff &
   Goldfarb, LLC v. Payne, Case No. 19-civ-11297 (S.D.N.Y. 2019), Canfield, Mendon,
   and other cases is recoverable in this arbitration.**

The Arbitrator believes that the time and labor this case required was tremendous. It was

one of the first of over 490 arbitrations. Due to the enormous amount of resources and time required

to pursue 495 arbitrations, four law firms worked together to represent Mr. Payne. Each law firm

dedicated at least two lawyers to these matters, many of whom have been working almost

exclusively on these cases. Attached to Claimant's fee application as Exhibits 1-4 are affidavits

from lead counsel for each one of the four law firms. As the affidavits show, many thousands of

hours were spent advancing these arbitrations. Some of these hours were spent on tasks that

benefited all cases – reviewing the tens of thousands of documents DST produced, preparing for

depositions of DST's witnesses and experts, retaining and consulting with experts to understand

the breaches of duty and damages – while other hours were spent specifically on Mr. Payne's case.

These hours specific to Mr. Payne include work such as communicating directly with him,

conference calls with the Arbitrator, preparing the scheduling order, responding to discovery,

producing the expert reports specific to him, individualizing his motion for summary judgment

and reply, preparing and producing him for his deposition, and preparing for his hearing which

included pre-hearing briefs, preparing and filing exhibit and witness lists, and meeting with the

trial team to discuss and plan for the hearing.

Mr. Payne's case presented some unique demands on counsel's time that were not present

in some of the other arbitrations as explained below. For example, this arbitration was the first

case Claimant's Counsel served and enforced discovery in. Hence, there were significant hours

dedicated to pursuing discovery from DST and Ruane in this case, and the claims against both

defendants were intertwined.

## Ruane v. Payne

Mr. Payne was sued in the Southern District of New York in an action seeking declaratory relief and an injunction to prevent Mr. Payne and other plan participants from proceeding with this and other arbitrations. *Ruane, Cunniff & Goldfarb, LLC v. Payne*, Case No. 19-civ-11297 (S.D.N.Y. 2019). Significantly, DST, which was a defendant in that case, joined with Ruane and sought to enjoin this arbitration and to prevent it from going forward and also sought to prevent 400 other individual arbitrations from going forward.

Hence, Claimant's Counsel had to defend the *Ruane v. Payne* lawsuit in the course of their representation of Mr. Payne in order to adequately prosecute this Arbitration. Claimant's counsel researched and prepared a motion to dismiss, as well as an opposition to the preliminary injunction motion. DST, for their part, filed a response in support of the preliminary injunction. The time required of Claimant's Counsel to defend the *Ruane v. Payne* lawsuit was significant and is reflected in the hours spent pursuing Mr. Payne's claim.

Claimant takes the position that all hours spent defending the *Ruane v. Payne* action are recoverable in this arbitration and has produced evidence that 189.55 hours (having an alleged value of $138,505.00) were spent defending this action. DST takes the position that none of the hours spent defending the *Ruane v. Payne* action are recoverable in this Arbitration. Both parties cite to *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004). *Parke* addressed the question of "whether the phrase 'any action' [in 29 USC. Section 1132(g)(1)] refers only to formal judicial actions, or whether we should interpret it more broadly to encompass administrative proceedings that take place beforehand." *Parke* held that ERISA does not allow recovery of attorney's fees incurred "during pre-litigation administrative proceedings." Id. at 1011. However, *Parke* distinguished the pre-litigation administrative proceedings presented in *Parke*

from the situation where a subsequent administrative proceeding is closely related to resolution of a judicial action/ERISA proceeding or where the administrative proceeding is necessary for enforcement of a judicial decree. *Id.* at 1011.

The Arbitrator also notes that in *Grand Elec., LLC v. Int'l Bhd. of Elec. Workers Local 265*, 2011 WL 6740408, at *9 (D. Neb. Dec. 22, 2011), a case cited by DST, the court allowed Defendant Funds to recover for attorneys' fees incurred in defending the plaintiff's declaratory judgment action where the declaratory judgment action would have precluded the defendants from asserting a right to recover contributions under ERISA.

Thus, this Arbitrator finds that Claimant should recover against DST for time spent defending the declaratory/injunctive action in *Ruane, Cunniff & Goldfarb, LLC v. Payne, supra.* The Arbitrator will discuss below the number of hours that will be awarded for that work.

### Canfield and Mendon

DST also challenges Claimant's request for attorneys' fees for time under the Group Time categories for time spent unsuccessfully opposing their disqualification in the Canfield and Mendon cases filed in the Southern District of New York. The Arbitrator finds that this time is not closely related to this Arbitration and declines to award in this Arbitration attorneys' fees for that time and has taken into consideration the amount of that time in determining the amount of Group time that is being included in the attorneys' fee award entered herein.

### Ruane v. DuCharme

DST also seeks to disallow attorneys' fees claimed in connection with defense of the action filed in the United States District Court for the Western District of Missouri in *Ruane v. DuCharme.* Time spent by Claimant's counsel on this matter was included as Group Time. The Arbitrator has disallowed Group Time he identified as having been spent on *Ruane v. DuCharme.*

## Ferguson

DST also seeks to disallow Group Time devoted to opposing the proposed mandatory class action settlement in the *Ferguson* mandatory class action lawsuit which according to the record would have resulted in a settlement of 10% of the losses claimed while Payne was able to collect 100% of claimed losses in this Arbitration. The Arbitrator finds that this time is properly included in Group Time because it is closely related to this Arbitration. Had a mandatory class been approved it would have precluded Mr. Payne from recovering 90% of his damages.

## Total Hours Claimed

Claimant's counsels seek 11,233.51 hours on work they claim benefited Mr. Payne's claim. Of this time, 10,667.16 hours were allegedly spent on work that benefited all claimants as a group ("Group Hours"). Claimant asserts that because these Group Hours benefited Mr. Payne, many of them would have been required even if he were the only arbitration claimant represented by Claimant's Counsel. On top of the Group Hours, 566.35 hours are sought on matters specific to Mr. Payne's claim. The time and labor spent was substantial and justifies a substantial lodestar award. The number of hours approved for payment will be discussed below.

### 2. The novelty and difficulty of the questions presented.

"ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). One of the complexities specific to this case is that DST attempted to invoke ERISA's "safe harbor" defense. DST claimed it delegated its fiduciary duties to Ruane, and therefore could not be held liable for the losses in Mr. Payne's account. For instance, on page 21 of its Opposition to Claimant's Motion for an Order Granting Summary Disposition, DST argued:

ERISA Section 405(d)(1) provides the DST Parties with a safe harbor from liability for any "acts or omissions" of an investment manager appointed under ERISA Section 3(38), and provides that the DST Parties have no "obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager." 29 U.S.C. § 1105(d)(1).

Claimant argued that DST was always a fiduciary and therefore always had a continuing duty to monitor. However, because of DST's "safe harbor" defense, Mr. Payne could not be confident that he could simply rely on the joint and several liability found in 29 U.S.C. § 1105(a) and so he endeavored to also prove his case on the grounds that "[t]he duty to monitor also includes a duty to take action upon discovery that appointed fiduciaries are not performing properly." *Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 787 (E.D. Mo. 2010) (quotation omitted).

By pouring through the tens of thousands of documents produced, taking depositions, and retaining experts, Claimant's Counsel was able to mount a compelling case against DST for failing to act despite knowing Ruane was not performing properly. Ultimately, DST chose to pay Mr. Payne all of his losses rather than proceeding to a hearing on the merits. But still, DST's "safe harbor" defense made an already complex area of law even more complex.

### 3. The skill requisite to perform the legal services properly.

As mentioned above, ERISA is a complex field involving difficult issues and lengthy litigation. *Krueger*, at *1, *see also In re AOL Time Warner ERISA Litig.*, No. 02 CIV. 8853 SWK, 2006 WL 2789862, at *8 (S.D.N.Y. Sept. 27, 2006) ("The substantive risks faced in this litigation are compounded by the fact that ERISA claims are rarely decided on their merits at trial, thus ERISA litigation boasts few successful precedents").

Add to all of this complexity the need to manage hundreds of arbitrations while DST took varying and inconsistent positions to prevent Claimant and other Plan participants from ever seeing a hearing and it becomes clear the skill Claimant's counsel needed to overcome these hurdles and

secure Mr. Payne 100% of his losses was exceptionally high. In the beginning, DST enforced the arbitration agreements and compelled their employees to resolve these claims via individual arbitrations. When Claimant's Counsel filed a class action in January 2017, DST moved to compel arbitrations, arguing that "because all of Mr. DuCharme's claims are subject to arbitration, and pursuant to Federal Rule of Civil Procedure 12(b)(6) this Court should dismiss the Amended Complaint with prejudice." *See DuCharme v. DST Systems Inc.,* Case No. 17-cv-00022-BCW, ECF No. 27. DST argued its class action waiver was binding and enforceable and "Mr. DuCharme or any other party to the Arbitration Agreement" was free to "arbitrat[e] a breach of fiduciary duty claim in connection with purported losses to their individual accounts." *DuCharme,* ECF No. 47. The court agreed and held the class action waiver prevented Mr. DuCharme from acting in a representative capacity on behalf of a class or collective action. *DuCharme,* ECF No. 57. As for his individual claims, the Court held "to the extent DuCharme alleges a § 502(a)(2) [claim] as an individual," his claims are arbitrable. *Id.*

And so, Claimant's Counsel began filing individual arbitrations – hundreds of them. Mr. Payne's was scheduled to be one of the first ones to have a hearing. Hence, not only did Claimant's Counsel need to prepare Mr. Payne's case for hearing by seeking written discovery, reviewing documents, taking depositions, and hiring expert witnesses, but they needed to do all of this while also scheduling and pursuing hundreds of other arbitrations. There can be no doubt successfully navigating so many arbitrations demands extremely skilled counsel.

The demands on Claimant's Counsel grew when, just as the arbitrations were set to be heard, DST reversed its prior position and sought to escape the arbitration agreements. It argued in the Southern District of New York that a mandatory class action was the only way to resolve these disputes. DST also moved to stay these arbitrations, first in court and when that failed in

14

each arbitration individually as the hearing date approached. Claimant's Counsel were forced to prepare for hundreds of arbitrations, oppose a mandatory class action, and oppose motions to stay. In addition, DST unsuccessfully argued in this arbitration that Claimant's counsel should be disqualified in this arbitration.

And yet, Claimant's Counsel prevailed for Mr. Payne. They secured for him a settlement for 100% of the losses to his retirement account. The Arbitrator finds that Claimant's counsel displayed a very high level of skill in handling the claims of Mr. Payne while pursuing over 490 other arbitrations and fending off other litigation designed to prevent Mr. Payne and other plan participants from recovering anything in arbitration proceedings. The legal skill, dedication and hard work displayed by Claimant's counsel in this arbitration is some of the best lawyering this Arbitrator has seen in over 40 years of practice in the Kansas City area.

### 4. The preclusion of employment by the attorney due to acceptance of the case.

Several of Mr. Payne's attorneys have worked on little else but these DST arbitrations over the past few years. For example, the Klamann Law Firm consists of one employee and two attorneys, John M. Klamann and Andrew Schermerhorn. Combined, these two attorneys have spent over 3,600 hours on matters that either benefited the arbitration group as a whole, or specifically Mr. Payne. They have been working almost non-stop on these cases, to the exclusion of all or most other matters, for the past ten months. Likewise, Kapke and Willerth has only four attorneys yet has spent over 2,000 hours on these arbitrations. Mr. Kapke's firm has had to pass on other matters so it could dedicate the time needed to these claims. William Carr has spent over 1,000 hours and has had to assign multiple tasks in other cases to other attorneys in his office. Since the beginning of this litigation, his firm (which has only six attorneys) has needed to carefully plan its caseload to ensure it could dedicate sufficient time and resources to these

arbitrations. Finally, Ms. Pierce has spent 2,498.95 hours that have either directly or indirectly benefited Mr. Payne's claim. She, too, has had little time to spend on any other matter. Claimant's Counsel has passed-up employment opportunities in order to pursue Mr. Payne's and his co-workers' claims for the past two years. They should be compensated for the time they have spent at the expense of pursuing other matters.

But, of course, it is not just an attorney's time that determines whether or not that attorney can take on a case. Cases cost money to litigate. Altogether, these experts have charged approximately One Million Dollars for work done in these arbitrations. The costs of pursuing Mr. Payne's and others' arbitrations also prevented Claimant's Counsel from taking on other matters.

DST is not disputing the claim for costs made by Claimant's counsel in this case.

## 5. The customary fee.

The Arbitrator finds that Claimant's citation to the fees in class action ERISA cases where the law firms handling those matters received large attorneys' fees awards based on a percentage of the recovery have little relevance to this case where the recovery was small and counsel is seeking recovery under the loadstar approach.

The Arbitrator finds that the requested hourly rates are on the upper end of the range of what the Arbitrator finds reasonable for other attorneys in ERISA and other complex litigation matters in the Kansas City area or in Missouri for that matter. The parties have not cited very many relevant cases on applicable rates, and the Arbitrator is not aware of any cases that are truly comparable to the instant arbitration which involved vigorous contested litigation over a claim of approximately          in the context of over 490 similar individual arbitrations and various court actions that were connected with and related to this arbitration. Indeed, in many respects

16

this arbitration is unique with little authority to rely upon to determine comparable market rates for such a unique case.

The Arbitrator notes that Claimant cited a 2016 case in the Southern District of Illinois where the Court held hourly rates for St. Louis attorneys in an ERISA case ranging from $998 - $460/hr were reasonable:

> [T]his Court finds that the reasonable hourly rate for Class Counsel's services at this time are as follows: for attorneys with at least 25 years of experience, $998 per hour; for attorneys with 15–24 years of experience, $850 per hour; for attorneys with 5–14 years of experience, $612 per hour; for attorneys with 2–4 years of experience, $460 per hour; for Paralegals and Law Clerks, $309 per hour; for Legal Assistants, $190 per hour.

*Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016). Similar hourly rates were recognized in 2009 as reasonable by the Circuit Court for the 22nd Circuit of Missouri. "[F]or attorneys with 25 years or more experience, $800 per hour; for attorneys with 15–24 years of experience, $625 per hour; 5–15 years of experience, $450 per hour; 2–4 years of experience, $325 per hour; and for professional support staff, $125 per hour." *Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012), vacated and remanded, 746 F.3d 327 (8th Cir. 2014) (citing *Eshelman v. Client Services, Inc., et al.*, No: 0822–cv–00763 (22d Cir.Mo. Dec. 7, 2009)).

In *Tussey*, the United States Federal Court for the Western District of Missouri approved a blended rate of $514.60 per hour for 25,160.8 hours and noted that a partner rate of $800 per hour was on the upper end of that charged by national law firms. *Tussey* 2012 WL 5386033, at *3. The Eighth Circuit reversed on other grounds, but held the court did not err when it held such a rate is reasonable: "Although the hourly rate the district court applied for attorney work is generous and the resulting fee award substantial, we are unable to say the district court abused its discretion in

determining the rate to use in calculating the award." *Tussey v. ABB, Inc.*, 746 F.3d 327, 340–41 (8th Cir. 2014).

Another way to compare Claimant's Counsel's hourly rates to the customary fee is to look at what defense counsel is charging. "Additionally, comparison of Plaintiffs' requested fees to the fees Defendants paid their attorneys may also be relevant to determining reasonableness." *Tussey*, 2012 WL 5386033 at *4 (citing *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1220 (8th Cir.1981)).

DST cites to *Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000) which held that it was not an abuse of discretion for the trial court to decline to compare Plaintiff's attorneys' billing rates to Defendant's attorneys' billing rate and suggested in dictum that it would not be advisable to do so stating that such an apples to oranges comparison was not required. However, that case does not hold that it is an abuse of discretion to consider the billing rates of opposing counsel.

DST also cites to *McKeage v. Bass Pro Outdoor World, L.L.C.*, 2018 WL 10648681, at *3 (W.D. Mo. Nov. 8, 2018) (noting that "[t]he Eighth Circuit has rejected the argument that comparison of an opposing side's billing records and rates is useful in calculating attorneys' fees" and acknowledging the "differences between class-action litigation on the plaintiff and defense side"). In *McKeage*, the court noted that plaintiffs' produced an affidavit stating that "a common hourly rate for class-action litigation in Missouri is $600-$800" and that plaintiffs had produced evidence of cases where class counsel was awarded fees at rates similar to the $650 to $700 per hour sought by plaintiffs' attorneys.

In *McKeage*, the plaintiffs' firms did not have documentation of time spent by para-professionals (paralegals and law clerks) such that the court could not determine what time was

spent by attorneys and what time was spent by paraprofessionals. Also, plaintiffs failed to provide complete support for the hours worked by attorneys in that there was a lack of descriptions accompanying hours worked by attorneys. These factors and the fact that the plaintiffs' counsel officed in Springfield were considered along with other factors in the court's decision to reduce the blended hourly rate in that case.

Nevertheless, Judge Fenner did not reduce the number of hours plaintiffs claimed were worked in light of the court's knowledge of the amount of work required to prosecute the case. Judge Fenner's citation to *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion) ("[T]he defendant cannot litigate tenaciously then be heard to complain about the time necessarily spent by the plaintiff in response.") (quotation omitted) is very applicable to this case where the Arbitrator takes note of the fact that DST has very vigorously defended this arbitration at every turn and has engaged in what this Arbitrator considers to be hard-ball litigation tactics. For example, DST opposed allowing Claimants to take a corporate designee deposition in this arbitration. Moreover, DST required Claimant's counsel to destroy documents that DST had produced in the *DuCharme* litigation and then re-produced the same documents with different bates numbers in this arbitration creating extra work for Claimant's counsel. While DST has every right to assert all possible substantive and procedural defenses in this litigation and in discovery, it should not be heard to complain that Payne's counsel spent many hours prosecuting the case when it was so vigorously defended every step of the way by DST. See *City of Riverside v. Rivera*, *supra*, 477 U.S. 561, 580 n.11 (1986).

The Arbitrator finds the rates of DST's New York counsel are of very limited relevance but acknowledges that some courts have looked at the amounts of fees incurred and rates charged by opposing counsel officing in another geographical area. However, the Arbitrator has considered

the rates of DST's counsel in Kansas City and all 12 of the factors referenced in *Greater Kansas City Laborers Pension Fund v. Thummel*, 738 F.2d 926, 931 (8th Cir. 1984) (*citing Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1117 (9th Cir. 1979)); and in *McKeage v. Bass Pro Outdoor World, L.L.C.*, 2018 WL 10648681, at *3 (W.D. Mo. Nov. 8, 2018) (citations omitted). The Arbitrator has also viewed the briefs, supporting documents, Exhibits and listened to the oral arguments at the hearing on attorneys' fees held in this case on October 23, 2020 for approximately 2.5 hours. The specific rates and hours the Arbitrator finds reasonable are set forth below in this Final Award.

**6. Whether the fee is fixed or contingent.**

Claimant's Counsel has an agreement with their client which allows them to seek attorney's fees from DST if they prevailed by judgment or settlement. In cases where damages prove to be much smaller than the cost of pursuing the case, like this one, the amount of attorney's fees awarded should be determined via lodestar rather than a contingency percent. To hold otherwise would undermine ERISA's purpose of empowering employees to protect their retirement income from losses caused by fiduciaries. No reasonable attorney would ever undertake to represent an ERISA plaintiff if the amount of damages were only about ▮▮▮▮▮ as in this case, or any modest amount, if attorneys' fees were limited to a percentage of the recovery. If this case had proceeded to a hearing and had DST prevailed on the merits, Claimant's counsel would have received nothing for their hundreds of hours of efforts and substantial expenses expended on behalf of Mr. Payne. This factor supports a higher hourly rate.

**7. Time limitations imposed by the client or the circumstances.**

Here, in order to protect Mr. Payne's right to a timely resolution of his claim, Claimant's counsel was tasked with quickly preparing for a hearing on a matter as complex and difficult as

ERISA law while simultaneously preparing for numerous other hearings. Despite these limitations, Claimant's counsel timely prevailed and secured a settlement for 100% of Mr. Payne's losses.

## 8. The amount involved and the results obtained.

The Supreme Court holds that when determining the proper amount of attorney's fees, along with the reasonable rate and reasonable hours spent the "extent of a plaintiff's success is a crucial factor." *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S. Ct. 1933, 1943, 76 L. Ed. 2d 40 (1983). The extent of claimant's success was absolute – he received 100% of his losses even though the amount recovered was small ($1,473.91).

As for the amount involved, courts in the Eighth Circuit and Missouri award attorney's fees in amounts many times greater than what the plaintiff recovers. In 2013 the Western District upheld the trial court's decision to award attorney's fees in an amount equal to 49 times (not percent) the amount of class recovery. *Berry v. Volkswagen Group of America, Inc.*, 397 S.W.3d 425 (Mo. App. W.D. 2013). *See also Schultz v. Sw. Credit Sys., LP*, No. 16-CV-2033-LRR, 2018 WL 3398139, at *2 (N.D. Iowa July 12, 2018) ("In this case, Schultz was awarded attorney fees in an amount 66.8 times greater than the damages he was awarded."). In *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004), the Eighth Circuit approved an award of approximately $78,600 in an ERISA case even though the judgment was only for $687.68 in interest (approximately 114 times the amount of the judgment for interest).

Here, Claimant's counsel seeks approximately 341 times the amount of the settlement in attorneys' fees and costs/expenses. The Arbitrator acknowledges that this is a higher multiple than in the other cases cited by the parties. However, given the unique facts and circumstances of this case and the vigorous defense by DST, the Arbitrator does not find the requested multiple unreasonable as a matter of law.

Courts are free to award attorney's fees in amounts many times higher than the client's recovery because the Eighth Circuit rejects "a per se rule applied by some courts that the attorney's fees award should be limited" to the amount of damages recovered. *Int'l Travel Arrangers, Inc. v. W. Airlines, Inc.*, 623 F.2d 1255, 1274–75 (8th Cir. 1980). There, the Eighth Circuit explained the ratio between the fees requested and amount recovered should be examined so the court can be satisfied the prevailing party did not unnecessarily run up their legal bill on a relatively small case with the intent of sticking the other side with their fees: "A party is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab. This court will exercise vigilance and pare down needless and unconscionably high legal fees. An award of attorney's fees is compensatory, not punitive" *Id.* 1275 (citing *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 871 (8th Cir. 1977).

Here, the Arbitrator finds that Claimant's Counsel is not guilty of running up unnecessary fees in pursuing Mr. Payne's claim. Quite the opposite, DST chose the litigation strategy of putting off the arbitration hearings for as long as possible by any means necessary. Only after the Arbitrator denied DST's final emergency motion to stay and it became clear the hearing would proceed the next week did DST first attempt to settle Mr. Payne's claim. The Arbitrator finds that Claimant's Counsel did not spend needless time negotiating, and quickly agreed on a settlement. Rather than needlessly accumulating attorney's fees, Claimant's Counsel has simply spent time on the work required to pursue this case, much of which was necessitated as direct result of DST's litigation strategy. This is not a case where DST made an early offer of judgment or attempted to pay Mr. Payne for his alleged damages early in the litigation of this matter.

**9. The experience, reputation, and ability of the attorneys.**

Humphrey, Farrington & McClain, P.C. is nationally recognized for its success in trying cases and since 1984 has over $1 Billion in verdicts across the country. Mr. McClain was the lead trial attorney on these cases. He is licensed both in the United States and Canada. In 2005, Missouri Lawyers Weekly honored him as the Attorney of the Year. It has since recognized him multiple times for having the Top Plaintiff's Verdict of the year. He has pioneered several areas of litigation including against asbestos suppliers, the tobacco industry, and artificial butter flavoring manufacturers and suppliers in the microwave popcorn industry. He recently won a $60 million verdict in New York for a husband and wife business ownership team in a breach of contract case against HMS Holdings Corp., where he served as lead trial attorney on a team of attorneys, many of which are Claimant's Counsel in this matter. Mr. McClain stated during the hearing on this matter that he often handles matters on a contingency basis and collects more than $10,000.00 per hour for his time. He also stated at the hearing that he has prevailed in litigation against Rob Adams of Shook Hardy and is entitled to a rate at least equal to that of Mr. Adams. This Arbitrator is familiar with the reputation of Mr. McClain who is regarded as one of the best plaintiff's attorneys in this region. Similarly, Mr. Adams is widely regarded as one of the best defense lawyers in this region. Indeed, both attorneys have national reputations.

The Klamann Law Firm is a boutique firm which takes on a variety of complex cases. It has been instrumental in the recovery of more than one-half billion dollars for Plaintiffs in a wide variety of complex litigation settings, including most recently a group of unprecedented recoveries for NFL players suffering from CTE. Mr. Klamann and Mr. Schermerhorn were both members of the team of attorneys that won the $60,000,000 verdict in New York, mentioned above. In his 42 years of practice, Mr. Klamann has been the responsible attorney for liability prosecution in an

action which was settled for $83 million for approximately 500,000 victims in a "vanishing premium" insurance class action; he has been lead counsel in a joinder of 147 plaintiffs in 23 states in a federal action involving securities fraud; and he has been lead counsel for a bankruptcy committee representing more than 23,000 asbestos victims; he has authored three (3) Am Jur Trial articles on how to prepare and try complex civil cases. Mr. Klamann was the "Attorney of the Year" in U.S. News in 2014 in the field of employment litigation.

Kapke & Willerth LLC maintains a broad practice including the representation of multiple municipalities, corporations, large homeowner's associations and individuals. George E. ("Ted) Kapke Jr. is the past President of the Eastern Jackson County Bar Association. He has served as lead trial counsel on seven jury trials that have been tried to verdict. These cases have ranged from employment discrimination matters to inverse condemnation claims including cases tried in the United States District Court of Kansas, Clay County and Jackson County, Missouri. He has tried dozens of bench trials and served as second chair counsel on numerous jury trials. In addition to his trial experience, he has served as first chair for three arbitrations tried to final decision and argued before the Missouri Court of Appeal for the Western District of Missouri on several occasions.

The law firm of White, Graham, Buckley & Carr has been in existence for over three decades and has successfully obtained tens of millions of dollars of verdicts for their clients, including several successful results in multi-plaintiff and Class Action representation. Recently the firm and its attorneys were selected in 18 categories for Best Lawyers by US News and World Reports and five categories for Best Law Firms. Mr. Carr, a managing partner, has been a trial attorney for nearly thirty (30) years and has been the lead trial counsel in over fifty (50) jury trials in multiple states, including Missouri, Kansas, Nebraska, and New York. He has obtained several

verdicts well in excess of a million dollars, including being part of the team (made up of many of the same attorneys in this group) that secured a $60 million jury verdict in a commercial case in the Commercial Division of the Manhattan County Court in New York. He has also served as co-counsel in a number of multi-Plaintiff or Class Action claims, including several settled and approved by the Court recently in the Western District of Missouri.

## 10. The "undesirability" of the case.

The Arbitrator finds that this arbitration was a very undesirable case to take. Mr. Payne's total damages were just over        [2]. Moreover, ERISA cases are difficult, time-consuming cases that can end in failure. Claimant's Counsel should not be punished for taking an undesirable case by receiving less than a reasonable hourly rate or less than the hours they reasonably spent on the case. *See West v. Aetna Life Ins. Co.*, 188 F. Supp. 2d 1096, 1100 (N.D. Iowa 2002) ("The court will not create a 'disincentive' to counsel to take on a challenging case or to obtain the specialized knowledge of an unfamiliar area of the law that may be required in a particular case, such as this one under ERISA, by reducing the attorneys' fees, after the fact, on the ground that counsel spent too much time becoming adequately prepared to prosecute the case.")

Another idea of the "undesirability" of this case comes from a comparison of the risks with the costs. Mr. Payne needed to hire counsel able to navigate the complex and difficult world of ERISA law. He also needed counsel capable (and willing) of investing significant resources into the case. His claim required at least three experts – one to discuss standard of care, one to discuss reasonable alternative investments, and one to calculate his damages. Without such counsel or experts, Mr. Payne could not prevail. The costs are high and so were the risks.

---

[2] DST's settlement is less than this because it is getting credit for the amount already paid by Ruane.
1647107v1

**11. The nature and length of the professional relationship with the client.**

Claimant's counsel has represented Mr. Payne for over two years. When DST filed its motion to disqualify Claimant's counsel, he signed a conflict waiver affirming he is happy with the representation provided by his counsel.

**12. Awards in similar cases.**

As far back as 2009, a Missouri state court held ERISA attorney's hourly rates of $800 - $325/hr to be reasonable. *Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012), *vacated and remanded*, 746 F.3d 327 (8th Cir. 2014) (citing *Eshelman v. Client Services, Inc., et al.*, No: 0822–cv–00763 (22d Cir.Mo. Dec. 7, 2009). The Judge in the Tussey case approved a blended rate of $514.60 for attorneys in that case decided in 2012. In 2016 in *Spano, supra*, a federal court held reasonable rates for St. Louis Missouri attorneys in an ERISA case ranged from $998 - $460/hr. The rates requested by Claimant's counsel are far below the rates DST's counsel, Paul Weiss, charged in this case ($1,560 - $775/hr.) and roughly in line with the rates charged by Shook Hardy of $890 to $625 per hour.

The Arbitrator does not believe it is reasonable to compare Claimant's fees request to contingent fee awards in class action cases with recoveries in the millions of dollars.

**F.     Claimant's Counsel's requested rates and the Arbitrator's decisions regarding what rates are reasonable in this case.**

The Arbitrator has carefully considered all the evidence and arguments of counsel and the authorities cited by the parties, his observations regarding the quality of the written briefs and oral arguments of counsel, the fact that there may have been some very minimal unnecessary duplication of efforts, the fact that some of Claimant's counsel's time entries were not as specific as they could have been and the 12 factors listed above and makes the following findings regarding the appropriate rates for Claimant's counsel in this case as follows:

The Arbitrator approves and finds the rate of $900 per hour reasonable under the unique facts in this arbitration for the following attorneys: Kenneth McClain, John Klamann, and William Carr.

The Arbitrator approves and finds the rate of $600 per hour reasonable under the unique facts in this arbitration for the following attorneys: Jonathan Soper, Andy Schermerhorn, Bryan White, George E. (Ted) Kapke, George Kapke, Sr., and Mike Fleming.

The Arbitrator approves and finds the rate of $500 per hour reasonable under the unique facts in this arbitration for J'Nan Kimak.

The Arbitrator approves and finds the rate of $400 per hour reasonable under the unique facts in this arbitration for Chelsea M. Pierce.

The Arbitrator approves and finds the rate of $150 per hour reasonable under the facts in this arbitration for Paralegal Shelli Hager.

### G. Arbitrator's findings regarding reasonableness of Claimant's Counsel's requested hours.

### Payne Hours and Group Hours

The Arbitrator recognizes that there are judgment calls to be made regarding what time should be considered Payne Time and what time should be considered Group Time. The Arbitrator, having reviewed the unredacted Group Time and Payne Time finds that a certain amount of Group Time which is time spent that benefits all arbitration plaintiffs, including Mr. Payne, should be awarded to fairly compensate Claimant's counsel for their efforts in this arbitration on behalf of Mr. Payne. Claimant's counsel suggests 1% of the Group Time. DST suggests nothing or at most 0.2% of the Group Time given that there were 495 arbitrations. In light of the fact that there has been little activity in many of the arbitrations and that Group Time incurred to date tends to benefit the arbitration plaintiffs whose hearings were scheduled early as

compared to other arbitration plaintiffs whose cases have been delayed, the Arbitrator finds that it is reasonable to allow 0.6% of the Group Time to be assessed against DST, which is halfway between 1% and 0.02%. Moreover, as explained below, the Arbitrator is further discounting some of the Group Time and a small amount of the Payne Time.

The Arbitrator notes that DST and its counsel did not keep time by individual arbitration claimant, and that DST estimated that its counsel at Paul Weis and Shook Hardy spent 127.2 hours at a total cost of $121,830 on this matter. The Arbitrator notes that DST did not supply any information regarding the hours spent defending this matter by DST's prior counsel Skadden Arps and Stinson, LLP who served as counsel in this matter until they were replaced by Paul Weis and Shook Hardy. Also, DST did not provide any information regarding time spent on this matter by in-house attorneys and in-house paralegals, if any.

The total number of hours estimated by DST to have been spent on defending the Payne arbitration appears low to this Arbitrator and does not include the hours spent by DST attorneys other than at Paul Weis and Shook Hardy. Nevertheless, the number of hours estimated by DST counsel and the work product that this Arbitrator has observed coming from DST shows a very sophisticated and vigorous defense of this matter which required a large number of Payne Time and Group Time hours to be spent by Claimant's counsel.

Claimant seeks to recover a loadstar based on 566.35 hours of Payne time and 1% of 10,667.16 hours of Group Time. DST challenges certain Payne time and certain Group Time on various grounds. The Arbitrator has considered these challenges and makes the following rulings and findings regarding what are reasonable hours that should be paid by DST as reasonable attorneys' fees.

## Ruane v. Payne Time

Claimant has allocated all his counsels' time defending *Ruane v. Payne* to Payne Time and has advised that he is seeking pay for 189.55 hours of work in defending this action where DST joined in seeking to enjoin this Arbitration. The Arbitrator finds that, although this time also benefited other arbitration plaintiffs, this time would have been incurred even if there had been no other arbitration plaintiffs, and Claimant's counsel will be prohibited from seeking recovery for these hours in any other arbitrations. The Arbitrator also finds the time entries specific enough and finds the number of hours expended defending this related litigation to be reasonable and will award Claimant fees at the reduced hourly rates mentioned above for these 189.55 hours less the reductions for time spent in negotiating and finalizing the Ruane settlement as explained below.

## Canfield and Mendon

The Arbitrator is deducting 8.3 hours of Mr. Ted Kapke's Group Time for work on the Canfield and Mendon disqualification lawsuits. The Arbitrator is deducting 114 hours of Andy Schermerhorn's Group Time for work on the Canfield and Mendon disqualification lawsuits. The Arbitrator is deducting 2.2 hours of Jonathan Soper's time for work on the Canfield and Mendon disqualification lawsuits. The Arbitrator cannot tell exactly how much time was spent by other Claimant's counsel on the Canfield and Mendon disqualification lawsuits but finds that the percentage deductions made below from Group Time will more than take into account any time spent by other attorneys for Claimant on the Canfield and Mendon disqualification lawsuits.

## Ruane v. DuCharme

DST objects to Claimant's counsel's entries in the *Ruane v. DuCharme* action filed by Ruane in the United States District Court for the Western District of Missouri. DST was not a party in that action and the fees Claimant's counsel incurred in that action are not recoverable from

DST. Therefore, the Arbitrator is disallowing 1 hour of Mr. McClain's Group Time, 1.5 hours of Mr. Ted Kapke's Group Time and 45.5 hours of Mr. Schermerhorn's Group Time work on *Ruane v. DuCharme*.

### Ruane v. Payne Settlement Time

As explained above, the Arbitrator finds that time spent by Claimant's Counsel defending the *Ruane v. Payne* lawsuit in which DST was a party and joined with Ruane in attempting to enjoin this Arbitration is generally recoverable against DST. However, time spent negotiating a settlement with Ruane is not recoverable. Therefore, the Arbitrator is disallowing 16 hours of Mr. McClain's Group Time and 18.1 hours of Mr. Schermerhorn's Group Time and 27.5 hours of Mr. Ted Kapke's Group Time and .75 hours of Mr. Ted Kapke's Payne time as hours spent on the settlement with Ruane.

### DST Claim that Fees Should be Reduced Because of Quarter Hour Billings

While there is some authority that an attorney's fee should be reduced for failing to bill in one-tenths of an hour, there is a split of authority on this issue. See e.g., *Nesse as Trustees of Minnesota Laborers Health & Welfare Fund v. Green Nature-C*, 2020 WL 2848193 at *3 (U.S. D. Minn.). The Arbitrator declines to reduce Claimant's counsel's hours because of quarter hour billings by some of Claimant's counsel.

### DST Claims of Over-Lawyering

DST claims that employing senior lawyers at four firms to work on this matter was over-lawyering and resulted in some unnecessary duplication of efforts and complains of the use of senior lawyers for tasks that could have been performed by more junior lawyers at lower rates. However, having considered all the evidence and the arguments of counsel, the Arbitrator is persuaded that given the prospect of having to run four or five simultaneous hearings that it was

reasonable to have numerous conferences and attorney to attorney communications and multiple attorneys at various hearings. Also, given the complexity of the case, the Arbitrator does not think it was reasonable to require Claimant's counsel to hire associates for those tasks to staff the cases with more junior lawyers. Given the vigorous opposition to Mr. Payne's claims by two of New York's premier law firms (when DST could have used its excellent local counsel in Kansas City at much lower rates—e.g., 2-year associates at Paul Weis are charging more per hour than 20 plus year partners at Shook Hardy), the Arbitrator does not find over-lawyering or use of senior lawyers by Claimant that warrants a reduction in the number of hours expended by the Claimant's attorneys.

### Argument that Claimant's Time Entries Include Vague or Inadequate Descriptions

DST's argument that some of the time entries of Claimant's counsel are vague has some merit. Mr. McClain explained that some of the time records were reconstructed and some were contemporaneous. Mr. McClain also explained the nature of the work performed with regard to some of the vague time entries including those of Mr. Klamann including his extensive review, organization and analysis of over 100,000 documents. Mr. McClain also explained the long hours spent by Ms. Pierce reviewing all the Arbitrators orders and keeping track of all deadlines and hearings. While many of the Group Time entries are general in nature, that can be explained in part by considering the fact that making very detailed Group Time entries for time spent benefiting almost 500 separate arbitrations could take excessive amounts of time.

That having been said, the generality and repetitiveness of some of the Group Time entries by some of Claimant's lawyers for Group Time does pose a challenge in determining the reasonableness of the hours of Group Time worked. The Arbitrator notes that the time entries of some of the Claimant's lawyers, particularly those in Mr. Kapke's law firm are more detailed than

the time entries of some of the other lawyers. Although the Affidavits of counsel and the arguments of Mr. McClain persuade the Arbitrator that the number of hours claimed as Group Time were in fact worked on Group Time, the Arbitrator believes that a 10% deduction in the Group Time spent by the following attorneys is warranted because of the vagueness and generality of their time entries: Kenneth McClain, John Klamann, Bill Carr, Andy Schermerhorn, Bryan White and Chelsea Pierce.

As to Payne Specific Time, the Arbitrator finds that the time entries of all of Claimant's counsel together with the Affidavits submitted, the oral arguments of counsel and the Arbitrator's review of their work products are sufficient to carry Claimant's burden of proving that these hours were reasonably expended and should be assessed against DST and no further reductions will be made in hours worked on this account, particularly where the Arbitrator has already considered this factor in making some slight reductions in hourly rates from the rates that would have been awarded had all of the time entries been more specific.

### Conclusions and Award as to Payne Time

The Arbitrator finds that the following attorneys' fee awards as reasonable as to Payne Specific Time:

Kenneth McClain: 20.5 hours at $900 per hour = $18,450.

John Klamann: 22.5 hours at $900 per hour = $20,250

Bill Carr: 54.75 hours at $900 per hour = $49,275

Ted Kapke: 138.50 hours at $600 per hour = $83,100

Andy Schermerhorn: 210.75 at $600 per hour = $126,450

Mike Fleming: 3.5 hours at $600 per hour = $2,100

Jonathan Soper: 49.4 hours at $600 per hour = $29,640

J'Nan Kimak: 29 hours at $500 per hour = $14,500

Chelsea Pierce: 34.45 hours at $400 per hour = $13,780

Shelli Hager: 2.25 hours at $150 per hour = $337.50

The Total Payne Specific time awarded is $357,882.00.

## Conclusions and Award as to Group Time

Kenneth McClain: 797.9 hours – 17 hours = 780.9 - 10% = 548.8 hours X .6% = 3.29 hours at $900 per hour = $2,961.

John Klamann: 1,603 hours - 10% = 1,442.7 X .6% = 8.7 hours at $900 per hour = $6,778.

Bill Carr: 963.7 hours – 10% = 867.3 X .6% = 5.2 hours at $900 per hour = $4,680.

George Kapke: 3.25 hours X .6% = .02 hours at $600 per hour = $12

Ted Kapke: 1,609.5 – 37.3 = 1572.2 X .6% = 9.43 hours at $600 per hour = $5,658

Andy Schermerhorn: 1,772.16 hours – 177.6 = 1,594.56 – 10% = 1,435.14 X .6% = 8.61 hours at $600 per hour = $5,167.

Mike Fleming: 362.05 hours X .6% = 2.17 hours at $600 per hour = $1,303.

Bryan White: 308.9 – 10% = 278 hours X .6% = 1.7 hours at $600 per hour = $1,020.

Jonathan Soper: 478.7 hours – 22 = 456.7 hours X .6% = 2.74 hours at $600 per hour = $1,644.

J'Nan Kimak: 287 hours X .6% = 1.72 hours at $500 per hour = $860.

Chelsea Pierce: 2,464.5 – 10% = 2,218 hours X .6% = 13.3 hours at $400 per hour = $5,320

The Total Group Time awarded is $35,403.

### Attorneys' Fees Incurred in Connection with Producing and Redacting Attorneys' Fees Records

Claimant's counsels have requested an additional award of $18,200 for 28 hours spent preparing fee applications materials at the request of this Arbitrator. The Arbitrator finds that this is a reasonable number of hours for this work, particularly since it does not reflect additional time spent responding to the Arbitrator's request for additional information regarding attorneys' fees and does not reflect time spent by Claimant's counsel preparing for and attending and being available to respond to questions at the attorneys' fees hearing. However, the Arbitrator finds that this time should be awarded at the rates specified above for a total of $17,000.00.

### Costs and Expenses

DST is not disputing the claim of $10,018.15 in costs incurred on behalf of several arbitration claimants and will enter an Award for those Costs and Expenses with the understanding that Claimant's counsel will only be able to recover once for these costs and expenses.

### Total Award

In conclusion, the Arbitrator finds that a reasonable attorneys' fee award in this case is $410,285.00 in attorneys' fees and $10,018.15 in expenses and costs for a grand total Award in favor of Claimant Percy Payne and against DST Systems, Inc. of $420,303.15 in Attorney's Fees and Costs.

The administrative fees and expenses of the American Arbitration Association (AAA) totaling $3,045.00 and the compensation and expenses of the Arbitrator totaling $55,221.00 shall be borne by Respondent.

The above sums are to be paid on or before forty (40) days from the date of this Final Award.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All other pending claims of Claimant against Respondent are denied.

John A. Vering, Arbitrator

Date:    November 18, 2020