**U.S. Department of Labor**          Office of the Solicitor



<u>**Via ECF and E-mail**</u>                                    January 15, 2021

Hon. Andrew L. Carter, Jr.
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007
ALCarterNYSDChambers@nysd.uscourts.gov

> Re:   ***Ferguson v. Ruane, Cunniff & Goldfarb Inc.*, No. 1:17-cv-6685-ALC-BCM**
> ***Ferguson v. Goldfarb*, No. 1:20-cv-07092-ALC-BCM**
> (Related Case *Scalia v. Ruane, Cunniff & Goldfarb, Inc.*, No. 1:19-cv-9302-ALC-BCM)
> **Letter re: Proposed Class Action Settlement Agreements**

Dear Judge Carter:

    Eugene Scalia, U.S. Secretary of Labor (the "Secretary"), writes to strongly object to any attempt to bind the Secretary through the injunctive provisions in the proposed settlement agreements and related proposed orders filed in the above-captioned cases.  "[T]he ERISA enforcement scheme, carefully constructed by Congress, is undermined if private litigants can sue ERISA violators first, reach a settlement, and bar the Secretary's action."  *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1425–26 (11th Cir. 1998).  Yet the parties attempt to undermine ERISA in exactly the same manner here.  For example, each of the parties' proposed Preliminary Approval Orders includes the following provision:

> the Court preliminarily enjoins and bars  . . . the Secretary . . . from bringing or prosecuting in any forum any Claim that arises from, relates to, or is connected with . . . the conduct alleged in a complaint or demand filed in any Related Proceeding and any subsequent pleading or legal memorandum filed in any Related Proceeding; [and] . . . the Plan (including, without limitation, the selection, retention and monitoring PSP investments, the performance, fees, and any other characteristic of the PSP) . . . .[1]

---

[1] *Ferguson*, ECF No. 261-4 ¶ 18 (emphasis added); *see also Ferguson*, ECF No. 263-4 ¶ 18; *Ferguson II*, ECF No. 7-4 ¶ 18.  The parties' proposed Final Approval Orders contain similar injunction provisions.  *See Ferguson*, ECF No. 261-3 ¶ 13; *Ferguson*, ECF No. 263-3 ¶ 13; *Ferguson II*, ECF No. 7-3 ¶ 13.

Moreover, the Secretary is not a party in these cases or to the proposed settlement agreements, nor has he communicated any endorsement of the proposed settlements to the parties.[2] Nevertheless, the parties have improperly conditioned their proposed class action settlement agreements on enjoining the Secretary from litigating his claims in his related case *Scalia v. Ruane, Cunniff & Goldfarb, Inc.*, No. 1:19-cv-9302-ALC-BCM ("*Scalia*"), pending before Your Honor, which would amount to a *de facto* motion to dismiss the *Scalia* action.[3]

As detailed in the Secretary's Opposition to Plaintiff's Motion for a Preliminary Injunction and Appointment of a Special Master in *Ruane, Cunniff & Goldfarb, Inc. v. Payne*, No. 1:19-cv-11297-ALC, ECF No. 40 (S.D.N.Y. Jan. 24, 2020) (attached as Exh. A), the Secretary has primary enforcement and regulatory authority for the fiduciary responsibility provisions in Title I of ERISA.  29 U.S.C. §§ 1132(a)(2) & (5), 1134, 1135.  Pursuant to that authority, the Secretary sued Ruane, Cunniff & Goldfarb, Inc., DST Systems, Inc., Robert Goldfarb, and fifteen other individuals who committed breaches of their ERISA fiduciary duties in connection with the mismanagement of investments of the DST Systems, Inc. 401(k) Profit Sharing Plan ("Plan"), causing major losses to the Plan that far exceed the proposed settlement amounts.  *Scalia*, ECF No. 1.  The *Scalia* matter is currently being litigated before Your Honor, and the Secretary recently filed an opposition to the defendants' motions to dismiss in that matter.  *Scalia*, ECF No. 134.

Well-established case law expressly forbids private parties from attempting to use settlements as a vehicle to enjoin the Secretary from exercising his right and responsibility to independently enforce ERISA.  *See Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1425–26 (11th Cir. 1998); *Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 146 (N.D.N.Y. 2005) ("Endorsement of a private settlement attempting to bar the Secretary's action in a particular case would effectively undermine the ERISA enforcement scheme carefully constructed by Congress.").  In asserting his claims in *Scalia*, the Secretary does not represent or otherwise step into the shoes of any participant or purported class member in the above-captioned cases.  Exh A. at 9; *see also* Exh. A at 6–10 (citing *S. C. Nat'l Bank*, 140 F.3d at 1426 n.22 ("ERISA gives plan beneficiaries and the Secretary independent rights of action . . . and

---

[2] The parties suggest that their proposed settlement agreements have the endorsement or approval of interested third parties. *See Ferguson*, ECF No. 265-1 at 23–24 ("If any [interested parties] have legitimate criticisms of the settlement (which *Plaintiffs strongly believe they do not*), those criticisms should be heard by the Court . . . ." (emphasis added)); *see also Ferguson*, ECF No. 266-1 at 23–24; *Ferguson II*, ECF No. 8-1 at 23.  As the Secretary has discussed previously: "the Secretary does not join or endorse any of the settlement agreements reached by the other parties."  Secretary's Letter Requesting Resolution of Pending Requests, *Scalia*, ECF No. 105 (attached as Exh. B).

[3] *See Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 1:17-cv-6685-ALC-BCM ("*Ferguson*"), ECF No. 261 ¶¶ 1.38, 1.6, 3.2.1, 3.2.6, 3.2.6.1; *Ferguson*, ECF No. 263 ¶¶ 1.39, 1.62, 3.2.1, 3.2.6, 3.2.6.1; *Ferguson v. Goldfarb*, No. 1:20-cv-07092-ALC (S.D.N.Y.) ("*Ferguson II*"), ECF No. 7 ¶¶ 1.39, 1.61, 3.2.1, 3.2.6, 3.2.6.1; *Doctor's Assocs., Inc. v. Reinert & Dupree, P.C.*, 191 F.3d 297, 303 (2d Cir. 1999) (reversing district court entry of injunction against non-party as contrary to Federal Rule of Civil Procedure 65(d)).

nowhere forecloses private actions after the Secretary files suit, or, the Secretary's suit after a private action commences.")).[4]

The fact that private parties have reached settlements in their cases has no impact on the Secretary's independent enforcement authority.  *See* Exh. B.  As the Secretary explained in his letter filed with the Court in *Scalia* on September 1, 2020, all participants have the right to pursue private actions "whether through federal litigation or arbitration."  *Id.*  Private settlements, however, cannot "affect the Secretary's own action except to reduce the total applicable recovery amount," and the Secretary remains committed to aggressively pursuing his claims in *Scalia* "until full relief is secured."  *Id.*

The Secretary strongly requests that the Court reject the improper injunctive provisions in the parties' proposed settlement agreements and, most urgently, the parties' requests for preliminary injunction in their proposed Preliminary Approval Orders.  These improper provisions impermissibly attempt to impede the Secretary's legal authority and ongoing litigation in *Scalia,* and would illegally undermine the ERISA enforcement scheme carefully constructed by Congress.[5]  Should the Court consider granting any of these proposed orders, the Secretary requests the opportunity to provide further briefing.

Respectfully submitted,

/s/Anna O. Area
ANNA O. AREA
Senior Trial Attorney

AMY TAI
Senior Trial Attorney

ALYSSA GEORGE
Trial Attorney

ISIDRO MARISCAL
Trial Attorney

Office of the Solicitor
U.S. Department of Labor

---

[4] *See also Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 691 (7th Cir. 1986) (in the context of private parties' settlements, explaining that "[t]o hold that res judicata bars the Secretary from independently pursuing enforcement of ERISA would effectively limit the authority of the Secretary under ERISA"); *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991) (per curiam) (noting that ERISA "authorizes the Secretary of Labor to bring suit concurrently with private plaintiffs to recover appropriate damages").

[5] Only Goldfarb has provided any legal argument in support of enjoining the Secretary's action in *Scalia*.  *See Ferguson II*, ECF No. 9 at 13–16.  Goldfarb merely reprises the failed arguments of Ruane's declaratory action in *Payne*, and they should be rejected for the reasons explained in the Secretary's briefing in that case.  Exh. A at 6–10. The Court should also reject Goldfarb's inappropriate attempts to re-litigate here (where the Secretary is not a party) the arguments he made in support of his motion to dismiss in *Scalia*.  *See Ferguson II*, ECF No. 9 at 2–9, 15–16.

Area.Anna.O@dol.gov
Tai.Amy@dol.gov
George.Alyssa.C@dol.gov
Mariscal.Isidro@dol.gov

*Attorneys for the Secretary*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| RUANE, CUNNIFF & GOLDFARB, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 1:19-cv-11297-ALC-BCM** |
| | ) | |
| PERCY PAYNE, et al., | ) | Related: No. 1:17-cv-6685-ALC-BCM |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>SECRETARY OF LABOR'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND APPOINTMENT OF A SPECIAL MASTER</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ............................................................................................................... 3

LEGAL STANDARD........................................................................................................ 4

ARGUMENT .................................................................................................................... 5

  I.  Ruane's Action is Without Merit, and the Remaining Preliminary Injunction Factors Do Not Support Enjoining the Arbitrations .............................................................. 5

    A.  Ruane is Not Likely to Succeed on the Merits and Its Action Does Not Raise Sufficiently Serious Questions to Make Them a Fair Ground for Litigation .................. 5

      1.  ERISA Authorizes the Secretary and Private Litigants to Bring Parallel Actions ...... 6

      2.  The Secretary's Action and *Ferguson* Do Not Displace the Other Plaintiffs' and Claimants' Rights to Bring Parallel Claims................................................................. 9

      3.  The Case Law Ruane Cites in Support of the Merits of Its Claims Is Inapposite ...... 10

    B.  Ruane Will Not Suffer Irreparable Harm if the Arbitrations Are Allowed to Proceed .. 12

    C.  The Balance of Hardships Does Not Tip in Ruane's Favor........................................... 19

    D.  The Public Interest Favors Allowing the Arbitrations to Proceed ................................. 19

  II.  The Appointment of a Special Master Is Not Necessary.................................................. 20

CONCLUSION................................................................................................................... 22

# TABLE OF AUTHORITIES

**Federal Cases**:

*Allstate Ins. v. Elzanaty*,
  929 F. Supp. 2d 199 (E.D.N.Y. 2013) .............................................................. 17, 18

*Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Television, Inc.*,
  934 F.2d 987 (8th Cir. 1991) ................................................................................. 8

*Beck v. Levering*,
  947 F.2d 639 (2d Cir. 1991) (per curiam) ............................................... 1, 8, 16, 17

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
  784 F.3d 887 (2d Cir. 2015) .................................................................................... 5

*Boguslavsky v. Kaplan*,
  159 F.3d 715 (2d Cir. 1998) ............................................................................ 12, 16

*Brockman v. Wyo, Dep't of Family Servs.*,
  342 F.3d 1159 (10th Cir. 2003) ........................................................................... 13

*Canfield et. al. v. SSC Technologies Holdings, Inc.*, et. al.,
  No. 18-cv-08913-ALC (S.D.N.Y.) ..................................................................... 13 n.6

*Coan v. Kaufman*,
  457 F.3d 250 (2d Cir. 2006) ........................................................................... 11, 12

*Cooper v. Ruane Cunniff & Goldfarb, Inc.*, et. al.,
  No. 1:16-cv-1900-WHP (S.D.N.Y.) ................................................................ passim

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .................................................................................... 10 n.5, 20

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983) ............................................................................... 7

*Dorman v. Charles Schwab Corp.*,
  780 F. App'x 510 (9th Cir. 2019) (unpublished opinion) ........................................ 8

*DuCharme v. DST Systems, Inc.*,
  No. 4:17-cv-22-BCW, 2017 WL 7795123 (W.D. Mo. June 23, 2017) ......................... 2, 15 n.8

**Federal Cases-(continued):**

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
　No. 17-cv-6685-ALC, 2019 WL 1434435 (S.D.N.Y. Mar. 29, 2019) ............................ passim

*Herman v. S.C. Nat'l Bank*,
　140 F.3d 1413 (11th Cir. 1998) .................................................................. 1, 6, 7, 8, 9

*In re AOL Time Warner ERISA Litig.*,
　No. 02 CIV. 8853 (SWK), 2006 WL 2789862  (S.D.N.Y. Sept. 27, 2006) ............................ 11

*In re Schering Plough Corp. ERISA Litig.*,
　589 F.3d 585 (3d Cir. 2009).................................................................................. 11

*In re United States*,
　No. 569, 1998 WL 968487 (Fed. Cir. Dec. 23, 1998) .............................................. 22

*In re World Trade Center Disaster Site*,
　No. 21-MC-100-AKH, 2006 WL 3627760 (S.D.N.Y. Dec 12, 2006).................................... 21

*Jayaraj v. Scappini*,
　66 F.3d 36 (2d Cir. 1995)................................................................................... 17

*LaRue v. DeWolff, Boberg & Assocs.*,
　552 U.S. 248 (2008)................................................................................... 11, 14

*Madrigal Audio Labs., Inc. v. Cello, Ltd.*,
　799 F.2d 814 (2d Cir. 1986)................................................................................ 21

*Mass. Mutual Life Ins. v. Russell*,
　473 U.S. 134 (1985)................................................................................... 10, 11

*Mendon, et. al. v. SS&C Technologies Holdings, Inc., et. al.*,
　No. 1:18-cv-10252-ALC (S.D.N.Y.) ................................................................. 13 n.6

*Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*,
　473 U.S. 614 (1985)........................................................................................ 19

*NASDAQ OMX Grp. v. UBS, Sec.*,
　957 F. Supp. 2d 388 (S.D.N.Y. 2013).................................................................... 18

*Netherlands Curacao Co., N.V. v. Kenton Corp.*,
　366 F. Supp. 744 (S.D.N.Y. 1973) ...................................................................... 18

**Federal Cases-(continued):**

*Parklane Hosiery Co., Inc. v. Shore,*
    439 U.S. 322 (1979) ............................................................................................... 13, 16

*Rodriguez ex rel. Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1999) .......................................................................................... 12

*Sacerdote v. Cammack Larhette Advisors,*
    939 F.3d 498 (2d Cir. 2019) .......................................................................................... 13

*Salinger v. Colting,*
    607 F.3d 68 (2d Cir. 2010) .............................................................................................. 5

*Scalia v. Ruane, Cunnif & Goldfarb, Inc., et al.,*
    No. 1:19-cv-09302-ALC, ECF No. 1 (S.D.N.Y. Oct. 8, 2019) ........................................ passim

*Sec'y of Labor v. Fitzsimmons,*
    805 F.2d 682 (7th Cir. 1986) ................................................................................. 6, 7, 8, 9

*Shirk v. Fifth Third Bancorp,*
    No. 05-CV-049, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ........................................ 11

*United States v. E. Baton Rouge Parish Sch. Bd.,*
    594 F.2d 56 (5th Cir. 1979) ............................................................................................. 7

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ....................................................................................................... 4, 5

**Federal Statutes:**

Employee Retirement Income Security Act of 1974, (Title I),
    *as amended*, 29 U.S.C. § 1001 et. seq.:

        Section 2, 29 U.S.C. § 1001 ......................................................................................... 1

        Section 2(a), 29 U.S.C. § 1001(a) ................................................................................. 1

        Section 2(b), 29 U.S.C. § 1001(b) ................................................................................. 1

        Section 409, 29 U.S.C. § 1109 ................................................................................... 16

        Section 409(a), 29 U.S.C. § 1109(a) ..................................................................... passim

        Section 502, 29 U.S.C. § 1132 ................................................................................... 18

**Federal Statutes-(continued):**

Section 502(a), 29 U.S.C. § 1132(a) ...................................................................... 15 n.7, 17

Section 502(a)(2), 29 U.S.C. § 1132(a)(2) .................................................................. passim

Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ......................................................... 1,  8, 18

Section 502(5), 29 U.S.C. § 1132(5) .................................................................... 8, 16

Section 504, 29 U.S.C. § 1134 ................................................................................. 6

Section 505, 29 U.S.C. § 1135 ................................................................................. 6

**Miscellaneous:**

Fed. R. Civ. P. 19(a) .................................................................................... 15 n.13
         53 .................................................................................................. 20
         53(a)(1) .......................................................................................... 21
         53(a)(1)(A) ...................................................................................... 21
         53(a)(1)(B) ...................................................................................... 21
         53(a)(1)(C) .................................................................................. 21, 22
         53(a)(3) .......................................................................................... 21
         53(g)(2) .......................................................................................... 21

Congress charged the Secretary of Labor ("Secretary") with the independent authority and responsibility to file civil actions to redress violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*, to recover losses suffered by employee benefit plans, and to obtain appropriate equitable relief.  ERISA sections 502(a)(2), (5), and 409(a), 29 U.S.C. §§ 1132 (a)(2), (5) and 1109(a).  Pursuant to that authority and responsibility, the Secretary sued Ruane, Cunniff & Goldfarb, Inc. ("Ruane"), DST Systems, Inc. ("DST"), and certain individuals who committed breaches of their ERISA fiduciary duties in connection with the mismanagement of investments of the DST Systems, Inc. 401(k) Profit Sharing Plan ("Plan"), causing major losses to the Plan.  *Scalia v. Ruane, Cunniff & Goldfarb, Inc., et al.*, No. 1:19-cv-09302-ALC, ECF No. 1 (S.D.N.Y Oct. 8, 2019).  Congress also authorized participants, beneficiaries, and fiduciaries to independently and concurrently bring claims to redress the same violations.  29 U.S.C. § 1132(a)(2), (3).  Contrary to Ruane's repeated mischaracterizations, the Secretary, in bringing suit, does not "represent" the Plan participants or the Plan, and his claims do not displace any claims that individual participants may bring independently of the Secretary's action.   The concurrent rights of action established by Congress recognize that while private litigation may only seek to protect the interests of the participants in employee benefit plans and their beneficiaries, the Secretary represents the broader "national public interest" in employee benefit plans recognized by Congress.  *Id*. § 1001(a), (b) (Congressional findings and declaration of policy); *Herman v. S. C. Nat'l Bank*, 140 F.3d 1413, 1423 (11th Cir. 1998).  But those parties with statutory standing to sue cannot, collectively or individually, recover more than the actual losses caused by a particular breach, regardless of the number of lawsuits or arbitration proceedings seeking that recovery.  *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991) (per curiam).

1

Despite these well-established, basic principles, Ruane has filed the instant action seeking declaratory relief that by its very terms challenges the independent authority of the Secretary and attempts to severely limit the Secretary's authority to bring suit and seek all available and appropriate relief.[1]  Ruane points to several related suits filed by Plan participants that have made their way through both the federal courts and arbitral tribunals.  Those suits pursue claims and relief arising from some of the same wrongdoing alleged in the Secretary's action, and only one case has recently commenced discovery on the merits of those claims.  Throughout those proceedings, federal courts, including this Court, have been able to appropriately manage the parties and claims at issue, including: (1) determining the adequacy of representation of unnamed parties as to claims for Plan-wide relief, *see, e.g.*, *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685-ALC, 2019 WL 1434435, at *4–5 (S.D.N.Y. Mar. 29, 2019) (opinion and order denying motion to intervene); and (2) compelling parties to arbitrate where appropriate, *see, e.g.*, *DuCharme v. DST Systems, Inc.*, No. 4:17-cv-22-BCW, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017) (order granting motion to compel arbitration and dismiss the amended complaint).

Nevertheless, despite the steady progress made in those cases, Ruane now seeks to throw a wrench in the system by filing this entirely new, unnecessary, and meritless declaratory action and Motion for a Preliminary Injunction and Appointment of a Special Master ("Motion" or "Mot.").   Instead of allowing the parties' and the Court's resources to be devoted to the serious claims brought against it, Ruane has filed a new case to answer abstract questions that, if necessary, should be answered in the cases where the claims are actually being adjudicated.  *See*

---

[1] While Ruane named the Secretary as only a "nominal" defendant, Ruane's theory, albeit incorrect, goes to the heart of the Secretary's authority to bring his own separate action.

Amend. Compl. ¶ 66 (ECF No. 10) ("*Scalia* presents a number of fundamental questions: whether *both* the Secretary and the *Ferguson* plaintiffs may *simultaneously* prosecute separate actions on behalf of the *same* entity (the Plan) and its participants to remedy the *same* purported harm to the *same* Plan assets caused by the *same* alleged breaches of fiduciary duty." (emphasis in original)).  The "fundamental" questions Ruane asks have either already been answered by the text of ERISA and established case law or simply do not matter for the continued orderly progression of all the active cases currently pending.  If and when important questions do arise, they should be addressed on a case-by-case basis in the cases where the claims will be adjudicated, not in this unsupportable global declaratory action.  The "shortcut" Ruane suggests is an unnecessary detour that will produce only delay.

In light of all this, Ruane's declaratory action is meritless and cannot support the extraordinary relief Ruane seeks.[2]  For this reason, and because Ruane has failed to prove the necessary factors for a preliminary injunction, as detailed below, Ruane's Motion should be denied.

## BACKGROUND

The Plan involved in all of these cases is a defined-contribution pension plan with individual participant accounts.  Amend. Compl. ¶ 21.  During the relevant time period, the Plan consisted of two components: a 401(k) portion and a profit sharing plan ("PSP") portion.  *Id.* ¶ 22.  The PSP portion is at issue, and Ruane was the PSP's investment manager up until 2016.  *Id.*

The Plan participants consist of former and current employees of DST.  DST's employee handbook contains an arbitration provision that requires employees to agree to arbitrate claims related to their employment at DST unless they opt out of the arbitration program.  *Id.* ¶¶ 24–27.

---

[2] For this and other reasons, the Secretary also intends to move to dismiss Ruane's complaint.

According to Ruane's Amended Complaint, approximately 500 out of around 10,000 Plan participants opted out of this arbitration agreement. *Id.* ¶ 67.

In October 2019, the Secretary sued Ruane, DST, and certain individuals, alleging that they breached their ERISA fiduciary duties with respect to the PSP's investments, causing major losses to the value of the PSP's assets. *Scalia*, ECF No. 1 ¶ 4. The Secretary's action seeks, among other relief, to restore all losses to the Plan as a whole, which includes the total sum of the losses to each participant's individual account. In addition to the Secretary's suit, four pending lawsuits and more than 400 individual AAA arbitrations allege some of the same wrongdoing alleged in the Secretary's suit.

In the midst of all this, Ruane has filed the instant action seeking declaratory and injunctive relief. Specifically, Ruane's action seeks to enjoin the pending arbitrations until the Court issues two declaratory judgments. First, it requests "a declaratory judgment that multiple participants here cannot at the *same* time seek recovery under ERISA in multiple forums for the *same* harm to the *same* Plan assets caused by the *same* alleged breaches of fiduciary duty." Amend. Compl. ¶ 72. Second, it seeks a declaratory judgment "that either *Ferguson* or *Scalia* represents all 10,000 Plan participants or only the approximately 500 who opted out of the Arbitration Agreement." *Id.* Ruane has filed the instant Motion seeking a preliminary injunction staying the arbitrations until the Court rules on the merits of Ruane's underlying claims. Ruane's Motion also asks the Court to appoint a special master "to assist the Court in rationalizing these proceedings." Mot. at 23.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction "must demonstrate: (1) a likelihood of success on the merits or . . . sufficiently serious questions

going to the merits to make them a fair ground for litigation and a balance of hardships tipping

decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an

injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public

interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of

Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79–80

(2d Cir. 2010) (alterations and internal quotation marks omitted)).  Ruane has the burden of

proving these factors.  *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir.

2003) (per curiam).  When considering whether these factors weigh in favor of injunction,

"courts must balance the competing claims of injury," "must consider the effect on each party of

the granting or withholding of the requested relief," and "should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at

24; *see also Salinger*, 607 F.3d at 79.

## ARGUMENT

### I.  Ruane's Action is Without Merit, and the Remaining Preliminary Injunction Factors Do Not Support Enjoining the Arbitrations

Ruane has failed to adequately demonstrate the four factors necessary for preliminary

injunction, most notably because Ruane's underlying action is without merit and its fear of

irreparable harm is unfounded.

### A.  Ruane is Not Likely to Succeed on the Merits and Its Action Does Not Raise Sufficiently Serious Questions to Make Them a Fair Ground for Litigation

Ruane's underlying action consists of a request for a declaratory judgment stating: (1)

that multiple participants cannot at the same time seek recovery under ERISA against the same

defendants in multiple forums for what Ruane alleges to be the same harm to the same Plan

assets; and (2) whether *Ferguson* or *Scalia* represents all 10,000 Plan participants or only the

approximately 500 participants who opted out of the arbitration agreement with DST.  Amend.

Compl. ¶ 79.[3]  Ruane is unlikely to secure either requested declaration.  The plain text of ERISA
and well-established case law make Ruane's first declaration request meritless.  Ruane's second
declaration request is premised on a misunderstanding of the nature of the actions and the claims
for relief in *Ferguson* and *Scalia*.  Neither declaration request, therefore, raises any serious
questions to make them a fair ground for litigation.  Ruane thus fails the first factor necessary for
a preliminary injunction.

>    **1.  ERISA Authorizes the Secretary and Private Litigants to Bring Parallel
>         Actions**

Ruane is unlikely to succeed in its first claim for declaratory relief because ERISA
authorizes multiple parties to recover plan losses caused by a breach.  The Secretary of Labor has
primary enforcement and interpretive authority for Title I of ERISA.  *See* 29 U.S.C. §§ 1132,
1134, 1135; *see also Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 692–94 (7th Cir. 1986).   The
statute authorizes the Secretary to bring civil actions to remedy fiduciary breaches and other
ERISA violations.  ERISA section 502(a)(2), (5), 29 U.S.C. § 1132(a)(2), (5).  Further, ERISA
section 502(a)(2) empowers each participant, beneficiary, and fiduciary, as well as the Secretary,
to bring a breach-of-fiduciary-duty claim to recover losses suffered by the plan and for
appropriate equitable relief.  29 U.S.C. §§ 1132(a)(2), (3), (5) and 1109(a).  This ability is
explicitly provided in ERISA.  *See, e.g.*, 29 U.S.C. § 1132(a)(2) ("A civil action may be brought
. . . by the *Secretary*, or by a *participant*, *beneficiary*, or *fiduciary* . . ." (emphasis added)).
Multiple claims are permitted to proceed simultaneously and in parallel.  *See S.C. Nat'l Bank*,
140 F.3d at 1426 n.22 ("ERISA gives plan beneficiaries and the Secretary independent rights of

---

[3] Ruane also seeks an injunction against the arbitrations in the underlying action, pending the
issuance of such a declaration.  *Id.* ¶ 79.

action . . . and nowhere forecloses private actions after the Secretary files suit, or, the Secretary's suit after a private action commences.").[4]

Parallel actions are appropriate because in bringing civil enforcement actions, the Secretary acts in the *public* interest, not merely in the interests of individual ERISA-covered plan participants:

> [I]n suing for ERISA violations, the Secretary seeks not only to recoup plan losses, but also to supervise enforcement of ERISA, to guarantee uniform compliance with ERISA, to expose and deter plan asset mismanagement, to protect federal revenues, to safeguard the enormous amount of assets and investments funded by ERISA plans, and to assess civil penalties for ERISA violations.

*S. C. Nat'l Bank*, 140 F.3d at 1423. *See also Fitzsimmons*, 805 F.2d at 692 (describing the Secretary's interests as the uniform application of ERISA, prospective relief, deterrence within the wider fiduciary community, recovery of penalties owed to the U.S. Treasury, and "the financial stability of billions of dollars of assets which in turn have a monumental effect on not only the Treasury of the United States, but on the national economy and commerce as well"). For this reason, courts have long recognized that the Secretary's enforcement authority is unimpeded by parallel private action. *See Donovan v. Cunningham*, 716 F.2d 1455, 1462 (5th Cir. 1983) ("[T]he United States has an interest in enforcing federal law that is independent of any claims of private citizens." (quoting *United States v. E. Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979)).

---

[4] While the "first-filed rule" may sometimes result in a court exercising its discretion to consolidate or dismiss similar private plaintiffs' actions based upon sufficiently similar claims, *see, e.g.*, *Ostrander v. DST Systems, Inc.*, No. 4:17-cv-747-BCW, ECF No. 73 (W.D. Mo. Feb. 2, 2018) (opinion and order granting motions to dismiss pursuant to first-filed rule), such a decision is appropriately taken within such existing actions, and does not necessitate a separate declaratory action.

Separate actions are important because the Secretary and private litigants represent different interests. "Each court [to have addressed this issue] recognized that the Secretary's national public interests in bringing an ERISA enforcement action are wholly distinct and separate from those of private litigants who seek to redress individual grievances or recoup plan losses for their personal benefit as plan beneficiaries." *S. C. Nat'l Bank*, 140 F.3d at 1424. Thus, the Seventh Circuit held that the Secretary and private litigants are not in privity and that *res judicata* did not bar the Secretary's separate action, even when the private litigation had already been resolved and settled. *Fitzsimmons*, 805 F.2d at 691 ("To hold that *res judicata* bars the Secretary from independently pursuing enforcement of ERISA would effectively limit the authority of the Secretary under ERISA."); *see also id.* at 692–94; *Beck*, 947 F.2d at 642 (noting that ERISA "authorizes the Secretary of Labor to bring suit concurrently with private plaintiffs to recover appropriate damages").

Just like private litigation proceedings, individual arbitration proceedings may also occur simultaneously without diminishing the independent rights of action of other plan participants or the Secretary. *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (unpublished opinion) ("When an individual participant agrees to arbitrate, he does not give up any substantive rights that belong to other Plan participants."); *cf. Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Television, Inc.*, 934 F.2d 987, 990 (8th Cir. 1991) (finding that trustees' independent right of action under ERISA section 502(a)(3) for unpaid contributions persisted even after union pursued same claim through arbitration under collective bargaining agreement).

Therefore, Ruane's first requested declaration—that "multiple participants here cannot at the same time seek recovery under ERISA in multiple forums for the same harm to the same

Plan assets caused by the same alleged breaches of fiduciary duty," Amend. Compl. ¶ 72 (emphasis removed)—is actually inversely true: multiple participants (and the Secretary) *can* at the same time seek recovery under ERISA against the same defendants in multiple forums even if they allege the same harm to the same Plan assets. By seeking a declaration otherwise and attempting to limit the Secretary's independent action, Ruane has failed to state a claim upon which relief can be granted.

### 2. The Secretary's Action and *Ferguson* Do Not Displace the Other Plaintiffs' and Claimants' Rights to Bring Parallel Claims

Ruane is equally unlikely to succeed in securing the second declaration because the question Ruane poses—whether the *Ferguson* plaintiffs or the Secretary in *Scalia* "represent" all 10,000 Plan participants or only the 500 who opted out of the arbitration agreement—is based on a misconception of the law. To be clear, the crux of the declaration Ruane seeks is the following: either (i) *Scalia* or *Ferguson* can pursue Plan-wide relief, and individual participants are precluded from recovering losses to their individual accounts through arbitration or litigation; or (ii) the individual arbitrations can preclude *Scalia* and *Ferguson* from pursuing Plan-wide relief. *See* Amend. Compl. ¶ 66 ("*Scalia* presents a number of fundamental questions: . . . may the Secretary, by bringing a suit on behalf of the whole Plan and its participants, cause individual beneficiaries to lose their right to arbitrate their claims . . . ."). This is a false choice.

In bringing his action, the Secretary does not "represent" any of the participants, as Ruane uses that word. If anything, the Secretary represents the public interest in enforcing ERISA's requirements and protecting the interests of the Plan and its participants. *See S. C. Nat'l Bank*, 140 F.3d at 1423; *Fitzsimmons*, 805 F.2d at 692. But the Secretary also does not represent any of the participants because, by bringing his action, he does not step into the shoes of individual participants or any claims they may bring. ERISA authorizes the Secretary to bring

9

his own independent action and his own claims including claims for Plan-wide relief.  *See* 29
U.S.C. §§ 1132(a)(2) and 1109(a).  The three individual *Ferguson* plaintiffs, for their part,
represent themselves.  Like the Secretary, the *Ferguson* plaintiffs do not step into the shoes of
other individual participants who are not party to their action or impede those participants'
ability to bring claims for relief.  Therefore, all of these actions should be allowed to proceed
accordingly.[5]

In sum, Ruane's second request for declaratory relief must fail because neither *Scalia*
nor *Ferguson* impede the right of the Arbitration Claimants (or the unnamed participants subject
to the arbitration agreements) to arbitrate their individual claims.  If anything, it is Ruane who is
hindering the Arbitration Claimants' individual rights to arbitrate by bringing this declaratory
action and seeking to enjoin the arbitrations.

### 3. The Case Law Ruane Cites in Support of the Merits of Its Claims Is Inapposite

Despite these basic principles, Ruane cites to a handful of cases regarding the need to
properly manage multiple actions arising out of the same fiduciary breaches in an attempt to
curtail the pending actions.  These cases are inapposite.  First, the discussion in *Massachusetts
Mutual Life Ins. v. Russell*, 473 U.S. 134 (1985), limiting relief available under ERISA section
409(a), 29 U.S.C. § 1109(a), to relief that inures to the benefit of the plan as a whole, pre-dates

---

[5] Moreover, the preclusive effects of any arbitration decision can be addressed in federal court
through well-established doctrine.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985)
("[C]ourts may directly and effectively protect federal interests by determining the preclusive
effect to be given to an arbitration proceeding.").  Further, the U.S. Supreme Court has noted that
"[s]ince preclusion doctrine comfortably plays this role, it follows that neither a stay of the
arbitration proceedings, nor a refusal to compel arbitration of state claims, is required in order to
assure that a precedent arbitration does not impede a subsequent federal-court action."  *Id.*  Thus,
to the extent Ruane is concerned that a court in any of the ongoing litigations may be hampered
by a prior arbitration decision, it need not be.  Nor does it make a declaration from this Court
necessary.

the Court's decision in *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008). In *LaRue* the Court specifically notes that its discussion of that topic in *Russell* is generally inapplicable in the defined contribution context where participants have individual accounts. 552 U.S. at 254–56. *LaRue* clearly established the right of an individual participant to seek relief under 29 U.S.C. § 1109(a) to recover plan losses that resulted in lowering the value of the individual plaintiff's plan account. *Id.* at 256.

The next group of cases Ruane cites all pertain to the granting of class certification requested by plan participants and focus on protecting the interests of plaintiff participants, not defendants. *See* Mot. at 21–22 (citing *In re AOL Time Warner ERISA Litig.*, No. 02 CIV. 8853 (SWK), 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006), *Shirk v. Fifth Third Bancorp*, No. 05-CV-049, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008), and *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009)). While the courts in these cases cite the possibility that one plaintiff's action could affect another action as a reason to grant class certification, they do not support Ruane's demand for a declaratory action aimed at limiting the scope of the Secretary's action in *Scalia*, the private *Ferguson* action, or the ongoing arbitrations that Ruane itself has, in part, compelled to occur. *See Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16CV1900, 2017 WL 3524682, at *1 (S.D.N.Y. Aug. 15, 2017). In fact, the clearer principle to be gleaned from these cases is that trial courts should be entrusted with the discretion to effectively manage their own dockets and evaluate diverse interests in the face of complex, multi-suit litigation.

Finally, Ruane mistakenly relies on the class-action representation interests discussed in *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), to curtail the rights of participants and the Secretary to seek redress for the alleged fiduciary breaches. Mot. at 22. But *Coan*, like the other class-certification cases Ruane cites, is focused on ensuring "the protection and adequate

11

representation" of plan participants, not on protecting defendants from facing multiple actions where the law permits. 457 F.3d at 257. Ruane's professed concern for the rights of participants was addressed by this Court in its previous findings. *See Ferguson*, 2019 WL 1434435, at *5 (denying a participant's motion to intervene because the named parties demonstrated a good faith effort to satisfy their requirement under *Coan* to ensure that absent participants' interests are protected). Ruane may be further comforted by the Secretary's recent legal action which also promotes the interests of all participants.

For all of these reasons, Ruane has failed to demonstrate that it is likely to succeed on the merits of its claims or that they raise serious questions, and its Motion should be denied.

### B. Ruane Will Not Suffer Irreparable Harm if the Arbitrations Are Allowed to Proceed

Of the four factors a plaintiff must demonstrate in order to secure a preliminary injunction, irreparable harm is "the single most important." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999). "The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Id.* at 234 (citation omitted). Here, Ruane has demonstrated no actual or imminent harm, but has instead speculated that potential harm could arise due to collateral estoppel effects Ruane fears could result from conflicting judgments or arbitration awards. A review of the principles of collateral estoppel, however, demonstrates that the harm Ruane fears is not only distant and speculative, it is unfounded.

Collateral estoppel, also known as issue preclusion, precludes a party from re-litigating an issue of law or fact that has already been decided in a prior proceeding. *Boguslavsky v. Kaplan*, 159 F.3d 715, 719–20 (2d Cir. 1998). Defensive collateral estoppel involves a defendant seeking to estop a plaintiff from asserting a claim that plaintiff has previously litigated

and lost against another defendant. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979). Offensive collateral estoppel involves a plaintiff seeking to estop a defendant from re-litigating the same issue that defendant has previously litigated and lost against another plaintiff. *Id.* at 329.

Collateral estoppel may only be asserted against a party who previously "had a fair and full opportunity to litigate" the relevant issue. *Id.* at 328. Thus, allowing Ruane to collaterally estop any one of the plaintiffs in these proceedings on the basis of its successful defense in another proceeding against a different plaintiff would violate the due process rights of the party Ruane sought to estop. *Id.* at 326–28; *see also Brockman v. Wyo, Dep't of Family Servs.*, 342 F.3d 1159, 1166 (10th Cir. 2003); *Sacerdote v. Cammack Larhette Advisors*, 939 F.3d 498, 505–06 (2d Cir. 2019).

The absence of any threat of irreparable harm due to the collateral estoppel effects posed by allowing the ongoing proceedings to continue is demonstrated by the brief summary of those proceedings below. Currently, there are five active lawsuits based at least in part upon allegations that Ruane breached its fiduciary duties by mismanaging assets of the Plan. There is no overlap of plaintiffs in any of these proceedings:[6]

1. In *Cooper*, the plaintiff is Clive Cooper. He brings claims individually, on behalf of a purported class of similarly situated participants, and seeks to recover all Plan losses. *Cooper*, ECF No. 1 at 1. Cooper was a party to an arbitration agreement with DST,

---

[6] "*Cooper*" is *Cooper v. Ruane Cunniff & Goldfarb, Inc.*, No. 1:16-cv-1900-WHP (S.D.N.Y.); "*Ferguson*" is *Ferguson v. Ruane Cunniff & Goldfarb, Inc.*, No. 1:17-cv-6685-ALC (S.D.N.Y.); "*Mendon*" is *Mendon v. SS&C Technologies Holdings, Inc.*, No. 1:18-cv-10252-ALC (S.D.N.Y.); "*Canfield*" is *Canfield v. SS&C Technologies Holdings, Inc.*, No. 1:18-cv-8913-ALC (S.D.N.Y.); "*Scalia*" is *Scalia v. Ruane, Cunniff & Goldfarb, Inc.*, No. 1:19-cv-9302-ALC (S.D.N.Y.).

and the court compelled him to arbitrate his claims with Ruane.  *Cooper*, 2017 WL

3524682, at *1.  Cooper appealed that order partly on the basis that Cooper alleges

Ruane is not party to the arbitration agreement.  *Cooper v. Ruane, Cunniff &*

*Goldfarb, Inc., et al.*, No. 17-2805-cv (2d Cir.).  A decision is currently pending in

the Second Circuit.

2.  In *Ferguson*, the plaintiffs are three individuals named Michael Ferguson, Myrl

Jeffcoat, and Deborah Smith.  *Ferguson*, ECF No. 82 at 1.  None of these plaintiffs

are party to the DST arbitration agreement.  They seek recovery of all Plan losses,

including Plan losses that affected the value of their individual accounts.  *Id.*

3.  In *Mendon*, the plaintiffs are Mark Mendon and Jill Pehlman.  *Mendon*, ECF No. 1 at

1.  Neither is party to the DST arbitration agreement.  They seek recovery of the

Plan's losses to the extent that they lowered the value of their individual accounts.  *Id.*

4.  In *Canfield,* , the plaintiffs are Robert Canfield,  Bonnie Kartz, Latrecia Onunkwor,

Diana Weaver, and David Ostermeyer.  *Canfield*, ECF No. 1 at 1-2.  None of these

plaintiffs are a party to the DST arbitration agreement or a plaintiff in any of the

above-listed lawsuits.  They seek recovery of the Plan losses to the extent that they

lowered the value of their individual accounts.  *Id.*

5.  In *Scalia*, the plaintiff is the Secretary of Labor, Eugene Scalia.  *Scalia*, ECF No. 1 at

1.  He seeks recovery of all Plan losses and does not represent any individual

participant.

Appropriately, all of the claims for fiduciary breach were brought pursuant to ERISA sections

502(a)(2), 29 U.S.C. § 1132(a)(2), to seek relief for the Plan's losses under ERISA section

409(a), 29 U.S.C. § 1109(a), and in accordance with the U.S. Supreme Court's holding in *LaRue*.

14

The plaintiffs in *Mendon* and *Canfield* seek Plan relief limited to each individual participant's account damages within the Plan, while in *Scalia, Cooper*, and *Ferguson* the plaintiffs seek compensatory and injunctive relief on behalf of the Plan as a whole. In none of these cases is the Plan a plaintiff.[7]

In addition to these lawsuits, there are over 400 individual AAA arbitrations. The claimant in each arbitration is an individual participant who is party to the DST arbitration agreement and was either compelled by the *Cooper* court or the *DuCharme* court to arbitrate their claims, or chose to arbitrate in light of the decisions compelling arbitration.[8] These claimants bring claims for the Plan's losses that damaged their individual account balances. Amend. Compl. ¶ 58. These claimants are at least theoretically members of the putative class Cooper proposes to represent in his case pending in the Second Circuit. While a decision in Cooper's favor in the Second Circuit could result in the ability of that litigation to move forward against Ruane after final arbitration decisions have already been issued, that possibility is neither imminent nor a matter requiring this separate proceeding. Thus, there is no danger of conflicting decisions affecting a single plaintiff.

Nevertheless, Ruane warns of "a serious risk of decisions and arbitration awards that will be inconsistent with each other and with this Court's rulings." Mot. at 17–18. But different results in these proceedings would merely be different and concurrent, not conflicting or irreconcilable. As explained above, ERISA sections 502(a)(2) and (3) empower each participant,

---

[7] Notably, ERISA section 502(a) does not empower the Plan to bring a fiduciary breach action; it only grants this power to participants, beneficiaries, fiduciaries, and the Secretary. The Plan is therefore named as a Rule 19(a) party in the *Scalia* action, solely to assure that the Court can grant complete relief. *Scalia*, ECF No. 1 at 1, 8.

[8] *See Cooper*, 2017 WL 3524682, at *1 (order granting motion to compel arbitration); *DuCharme*, 2017 WL 7795123, at *1 (same).

beneficiary, and fiduciary, as well as the Secretary, to bring breach of fiduciary duty claims under ERISA section 409 to recover losses suffered by the Plan. These claims are permitted to proceed simultaneously and in parallel. While Ruane is a common defendant in each of these proceedings, no risk of conflicting decisions exists because, contrary to Ruane's assertions, Mot. at 18, no single participant is a plaintiff in more than one of these suits or is in privity with another plaintiff. Thus, a different result in one proceeding would have no defensive collateral estoppel effect on plaintiffs in another.

On the other hand, it is true that the plaintiff in a later action may be able to use another plaintiff's successful result in an earlier action to offensively estop Ruane from re-litigating the same defense in the later action. *See Parklane Hosiery*, 439 U.S. at 331–33. This concern will not be addressed by staying the arbitrations, however, for a claimant in an arbitration could just as easily use a court decision to estop Ruane from repeating a losing defensive argument in an arbitration as the other way around. *Boguslavsky*, 159 F.3d at 720. Further, because there is no overlap of plaintiffs or claimants in any of the proceedings, different results in different forums would co-exist without conflict.

Ruane repeatedly speculates that the overlap in the monetary relief sought in the various proceedings it faces could result in it and DST facing "substantially greater than the maximum amount of purported losses suffered in the aggregate by the Plan and all its participants." Mot. at 18, 21. This argument is patently false and, as the Second Circuit has held, "frivolous." *Beck*, 947 F.2d at 642. In no event would the Plan as a whole or any of its participants recover an aggregate sum greater than actual losses suffered plus appropriate lost opportunity costs and any other equitable relief courts deem appropriate. ERISA section 409(a), 29 U.S.C. § 1109(a). Defendants will not be subject to liability for more than the actual losses because any amount the

16

Secretary recovers for the Plan is reduced by the amount any arbitration claimant or private plaintiff recovers for the Plan, and vice-versa. *Beck*, 947 F.2d at 642. Any payments on concurrent judgments and/or arbitral awards for the same loss to the Plan will be credited to all of those judgments and/or awards. In short, the Plan can only recover its losses once.

Similarly, should the Secretary or the *Ferguson* plaintiffs win their claims, those wins would not render any ongoing arbitrations a "nullity," as Ruane alleges. Mot. at 19. It is true that a claimant or plaintiff who loses in his or her individual proceeding might still receive the benefit of their pro rata share of any Plan losses the Secretary or the *Ferguson* plaintiffs successfully recover for the Plan as a whole. This reality is a result of the statutory text in section 502(a) of ERISA, however, and does not result in the nullification of any prior, different decision. Rather, those different decisions will simply co-exist in parallel. This reality does not constitute irreparable harm necessitating a preliminary injunction of the arbitrations.

Ruane also alleges that it faces irreparable harm in the form of Ruane and DST being forced to simultaneously defend against five litigations and over 400 arbitrations.[9] But "money, time and energy necessarily expended in the absence of a stay . . . are not considered irreparable." *Allstate Ins. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (internal quotation marks omitted) (*citing Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)). And piecemeal resolution is at times required by the Federal Arbitration Act when necessary to give effect to an arbitration agreement. *Elzanaty*, 929 F. Supp. 2d at 222.

---

[9] It is worth noting that DST entered into, and Ruane argues it is party to, arbitration agreements with a majority of the over 10,000 participants in the Plan. It can therefore come as no surprise to Ruane that it is facing hundreds of arbitrations, for this is a situation of its own making. *See* Ruane Br., *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 17-2805, 2018 WL 4740096, at *9 (2d Cir. Sept. 28, 2018) (acknowledging that in 2008 all DST employees received an employee handbook containing an arbitration provision).

Thus, for collateral estoppel purposes, each plaintiff will be bound by the decision of only the one proceeding in which he or she partakes. While each participant may ultimately benefit from the result of more than one decision if more than one plaintiff succeeds in their claims, that is simply a function of the design of ERISA section 502, which allows more than one parallel proceeding for the same alleged breach. In no event would the Plan as a whole recover more than total actual losses and lost opportunity costs, and in no event would any participant receive more than the actual losses and lost opportunity costs suffered in his or her own individual account.

Finally, the cases Ruane relies upon for the proposition that being forced to defend itself in multiple proceedings would cause it—and somehow the Plan participants—irreparable harm are again inapposite. In *Elzanaty*, the district court awarded a stay of arbitration out of concern that the arbitration awards would "eventually be, at best, inconsistent with [the court's] ruling, and at worst, essentially ineffective." *Id.* at 222. Here, no risk of inconsistent or ineffective awards exists, however, as explained in detail above. In *NASDAQ OMX Grp. v. UBS Sec.*, 957 F. Supp. 2d 388 (S.D.N.Y. 2013), the court stayed arbitration pending a determination as to whether a party was party to an arbitration agreement, on the grounds that irreparable harm could occur if a party were compelled to arbitrate without having first agreed to arbitrate. 957 F. Supp. 2d at 407. Thus, only the Arbitration Claimants, not Ruane, could plausibly rely upon *NASDAQ*. In *Netherlands Curacao Co., N. V. v. Kenton Corp.*, 366 F. Supp. 744 (S.D.N.Y. 1973), the court stayed an arbitration after determining that the claimant had waived its right to arbitrate the issue before the court. 366 F. Supp. at 748. Here, the Arbitration Claimants have not waived any such right, but have effectively been compelled to arbitrate by Ruane.

For these reasons, Ruane has failed to demonstrate the most important factor necessary for the issuance of a preliminary injunction: irreparable harm. The various potential scenarios that Ruane has decried simply would not result in the type of irreparable harm that Ruane must demonstrate to secure the injunction it seeks.

**C.     The Balance of Hardships Does Not Tip in Ruane's Favor**

Ruane argues that the balance of hardships tips in its favor because it will suffer irreparable harm if the injunction is not granted, whereas "granting injunctive relief would not cause Claimants any hardship; indeed, it would benefit them." Mot. at 24–25. To the contrary, as demonstrated above, Ruane faces no irreparable harm. Ruane's warnings regarding the possibility of arbitration awards being issued that are ultimately unenforceable or conflicting are groundless. Moreover, Ruane's distress here over having to arbitrate claims is of its own making, considering Ruane's position advanced in the *Cooper* litigation resulted in the effective compulsion of the very arbitrations Ruane now seeks to stay. Meanwhile, the Arbitration Claimants are threatened with denial of their right to a timely recovery of losses to their retirement savings. For those participants who are now at or near retirement, this harm is particularly great. Ruane's assertion, then, that a stay of the arbitration proceedings would actually benefit the Arbitration Claimants is unsupported. In fact, the relief Ruane seeks would further delay the Plan participants' rights to relief under ERISA.

**D.     The Public Interest Favors Allowing the Arbitrations to Proceed**

Public policy favors arbitration. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (finding an "emphatic federal policy in favor of arbitral dispute resolution" as reflected by the passing of the Federal Arbitration Act). Yet Ruane dismissively claims that there is "no evidence to indicate that a temporary stay of the Arbitrations would cause a disservice to the public interest or, for that matter, affect it in any

way." Mot. at 8.  To the contrary, staying the ERISA arbitration proceedings here would do a grave disservice to the public interest that is memorialized in ERISA itself, i.e., the public interest of securing employees' retirement income.

Ruane's attempt to enjoin the arbitrations—the very arbitrations Ruane sought to compel—is also contrary to the clear public policy enshrined in the Federal Arbitration Act that favors arbitration.  *See, e.g., Byrd*, 470 U.S. at 223 (holding "neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is required in order to assure that a precedent arbitration does not impede a subsequent federal-court action").  In addition, these contradictory actions taken by Ruane against the Plan participants fly in the face of the public policy forged in ERISA of allowing participants to recover their illegally compromised retirement savings in a timely manner by holding personally accountable the fiduciaries who held those savings in trust.

Finally, Ruane argues that granting injunctive relief here will serve the "public interest of conserving judicial and arbitration resources by preventing duplicative proceedings."  Mot. at 25.  This argument fails not only because no such duplicative proceedings exist, as demonstrated above, but also because it is Ruane who works against that public interest by filing the present action.  Ruane demands that limited judicial resources be used here not only to consider the extraordinary relief of a preliminary injunction but also a special master to explain how ERISA section 502(a)(2) functions.  Ruane has thus summarily failed to demonstrate that the public interest would not be disserved by the issuance of the injunction it seeks.

## II.   The Appointment of a Special Master Is Not Necessary

As the discussion above reveals, the Court may easily dispatch with Ruane's request for a preliminary injunction and ultimately Ruane's entire declaratory action.  Nevertheless, Ruane suggests that the Court add to the unnecessary expense and toil wrought by Ruane's suit by

20

appointing a special master under Fed. R. Civ. P. 53 ("Rule 53") to "analyze these proceedings

and make a recommendation to this Court" on Ruane's request for declaratory relief. Mot. at 15.

Ruane offers scant support for its request, and the circumstances here do not merit the

appointment of a master.

Rule 53(a)(1) allows a court to appoint a master for three purposes: (A) to "perform

duties consented to by the parties;" (B) for trial proceedings; or (C) to "address pretrial and

posttrial matters that cannot be effectively and timely addressed by an available district judge or

magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(A)–(C). The rule requires the court to

"consider the fairness of imposing the likely expenses on the parties," Fed. R. Civ. P. 53(a)(3), in

light of the fact that compensation for the master must be paid by either the parties or a fund

established by the litigation, Fed. R. Civ. P. 53(g)(2).

Ruane has offered little justification for the appointment of a master in this case. To

begin, Ruane has not set out under which provision of Rule 53(a)(1) it seeks a master. There is

no suggestion of consent by the parties (and none exists) to invoke Rule 53(a)(1)(A), or that trial

is required on Ruane's purported claims in this action that would bring Rule 53(a)(1)(B) into

play. As for appointing a master for pretrial matters under Rule 53(a)(1)(C), the need for any

discovery, let alone complex or extensive discovery, on Ruane's claims would be remarkable,

and no special expertise is needed to address the issues Ruane raises in this action, as would be

the case in, for example, patent litigation. *See, e.g., Madrigal Audio Labs., Inc. v. Cello, Ltd.*,

799 F.2d 814, 821 n.2 (2d Cir. 1986) (noting that complex issues are not enough for appointment

of a master).

Ruane cites *In re World Trade Center Disaster Site*, No. 21-MC-100-AKH, 2006 WL

3627760 (S.D.N.Y. Dec. 12, 2006), in support of its request, but there the court found a need to

appoint special masters to organize and review "thousands of . . . individual cases" before the court.  2006 WL 3627760, at *1.  The court faced a similar situation in the second case Ruane cites, *In re United States*, No. 569, 1998 WL 968487, at *1 (Fed. Cir. Dec. 23, 1998) (upholding the appointment of a master to manage approximately 120 related cases).  Here, Ruane is not requesting a master to manage this case and all of the related cases, but rather to answer the "questions" Ruane has raised in its request for declarations—questions that, as the discussion above demonstrates, lend themselves to relatively straightforward disposition with minimal briefing.  Rather than incur unnecessary toil and expense by appointing a master to answer Ruane's "questions," the Court would be better served by expeditious disposal of Ruane's action on its own with the benefit of the parties' briefing.  Therefore, Ruane's request to appoint a special master in this case should be denied.

## CONCLUSION

For the foregoing reasons, Ruane's Motion for a Preliminary Injunction and Appointment of a Special Master should be denied.


Dated:  January 24, 2020

Respectfully Submitted,


For the Secretary:

KATE O'SCANNLAIN
Solicitor of Labor

G. WILLIAM SCOTT                                        JEFFREY S. ROGOFF
Associate Solicitor for Plan Benefits Security          Regional Solicitor

GLENN M. LOOS
Counsel for Litigation

 /s/ Anna O. Area
ANNA O. AREA
Senior Trial Attorney

ISIDRO MARISCAL
Trial Attorney
Office of the Solicitor
Plan Benefits Security Division
U.S. Department of Labor
P.O. Box 1914
Washington, DC  20013
Tel: (202) 693-5600
Fax: (202) 693-5610
Area.Anna.O@dol.gov
Mariscal.Isidro@dol.gov


*Attorneys for the Secretary*

MICHAEL R. HARTMAN
ERISA Counsel
New York Regional Solicitor's Office
201 Varick Street
Room 983
New York, New York 10014
Telephone:  (646) 264-3650
Facsimile:    (646) 264-3660
Hartman.Michael@dol.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2020, a true and correct copy of the foregoing

Secretary's Opposition in Response to Plaintiff's Motion for a Preliminary Injunction and

Appointment of a Special Master was sent to counsel of record for all parties via ECF.

/s/ Anna O. Area
ANNA O. AREA
Office of the Solicitor
Plan Benefits Security Division
U.S. Department of Labor
P.O. Box 1914
Washington, DC 20013
Tel: (202) 693-5600
Fax: (202) 693-5610
Area.Anna.O@dol.gov

# EXHIBIT B

**U.S. Department of Labor**      Office of the Solicitor



**Via ECF and E-mail**      September 1, 2020

Hon. Andrew L. Carter, Jr.
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
ALCarterNYSDChambers@nysd.uscourts.gov

> Re:  ***Scalia v. Ruane, Cunniff & Goldfarb, Inc., et al.***, No. 1:19-cv-9302-ALC-BCM
> (Related Case Docket No. 1:17-cv-6685-ALC-BCM)
> **Letter Requesting Resolution of Pending Requests**

Dear Judge Carter:

Plaintiff Eugene Scalia, U.S. Secretary of Labor (the "Secretary"), writes regarding the Secretary's currently pending action, *Scalia v. Ruane, Cunniff & Goldfarb, Inc., et al.*, No. 1:19-cv-9302-ALC-BCM ("*Scalia*"). After the Secretary filed his Complaint in October 2019, defendants submitted pre-motion conference requests for their proposed motions to dismiss, ECF Nos. 82 through 86, and the Secretary submitted his responses, ECF Nos. 87 and 88, in December of last year. As detailed in those responses, the defendants' requests should be denied because their anticipated motions to dismiss are improper at this stage, are based on a misrepresentation of the Secretary's claims, and lack merit. The Secretary remains eager to move forward with his case, and therefore respectfully requests resolution of the defendants' requests at Your Honor's earliest convenience.

The Secretary is aware that a number of developments have occurred in the various private actions related to *Scalia*, and wishes to emphasize that none of those developments affect the Secretary's authority or responsibility to aggressively pursue his claims in *Scalia*. As the Secretary explained in his opposition to Ruane's motion for a preliminary injunction in the *Payne* declaratory action, all participants have the right to pursue private actions under ERISA Section 502(a)(2), whether through federal litigation or arbitration. *See Ruane, Cunniff & Goldfarb, Inc. v. Payne, et al.*, No. 1:19-cv-11297-ALC-BCM, ECF No. 40. These proceedings occur in parallel with the Secretary's own action. No outcome in any of the private proceedings—including class certification and/or settlement—will preclude the Secretary's own affirmative case, and the Secretary will continue to litigate until full relief is secured.

Although multiple settlements have been proposed in the related private actions, the Secretary does not join or endorse any of the settlement agreements reached by the other parties, and, even if finalized, none of these settlements will affect the Secretary's own action except to reduce the total applicable recovery amount. Similarly, while plaintiffs in *Ferguson v. Ruane*,

*Cunniff & Goldfarb, Inc., et al.*, No. 1:17-cv-6685-ALC-BCM, have moved for class certification, the Secretary has not taken a position regarding that motion because class certification would not alter the Secretary's authority to pursue his own claims in *Scalia*.

The Secretary will continue exercising his enforcement authority to redress the ERISA violations alleged in his Complaint until the interests of the Secretary, the DST Systems, Inc. 401(k) Profit Sharing Plan, and all of the Plan's participants and beneficiaries are fully vindicated. The Secretary's positions regarding his ability and responsibility to do so, as well as how recoveries from the various proceedings would properly be reconciled without risk of "overlap," are detailed in the Secretary's same opposition paper referenced above. *Payne*, ECF No. 40. All positions taken by the Secretary in that brief still stand.

For all of these reasons, the Secretary respectfully seeks resolution of the defendants' pending pre-motion conference requests in the *Scalia* action, via a status conference or otherwise, at Your Honor's earliest convenience.

Respectfully submitted,


/s/ Anna O. Area
ANNA O. AREA
Senior Trial Attorney

AMY TAI
Senior Trial Attorney

ISIDRO MARISCAL
Trial Attorney

Office of the Solicitor
U.S. Department of Labor

Area.Anna.O@dol.gov
Tai.Amy@dol.gov
Mariscal.Isidro@dol.gov

*Attorneys for the Secretary*